IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
AT MEMPHIS

AVERY OUTDOORS LLC
f/k/a BANDED FINANCE LLC,

    Plaintiff,

v.                                                    Case No. 2:16-cv-02229-SHL-tmp

PEAK ROCK CAPITAL, LLC, and
OUTDOORS ACQUISITION CO, LLC

    Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO COMPEL FULL PRODUCTION OF UNREDACTED DOCUMENTS**

      Plaintiff Avery Outdoors LLC f/k/a Banded Finance LLC ("Banded"), by and through its undersigned counsel and pursuant to Rule 37 of the Federal Rules of Civil Procedure, hereby submits this memorandum in support of its Motion for an order compelling Defendant Outdoors Acquisition Co, LLC ("OAC") to provide full unredacted copies of documents which OAC has produced in response to Banded's First Set of Requests for Production of Documents.  In support of its motion, Banded states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

      As more fully laid forth in the Verified Complaint and subsequent pleadings filed by Banded, this case concerns Defendants' wrongful charging of over $460,000 in impermissible and excessive "legal and other" fees that OAC improperly demanded in its May 7, 2015 loan payoff statement.  On April 26, 2016, Banded propounded its First Set of Requests for Production of Documents to OAC seeking the production of all documentation "evidencing,

1

summarizing, itemizing, supporting, defining, and/or justifying" for each of the seven (7) categories of the alleged "legal and other fees" totaling $461,512.88 as claimed by OAC in its May 7, 2015 loan payoff statement. On June 30, 2016, Banded was forced to file an expedited motion to compel OAC to produce the outstanding responses and document production [Doc No. 29] which detailed the procedural and factual history of this case relating to this discovery dispute and set forth the document requests in their entirety.

On July 26, 2016 this Court held a status conference with all counsel present to discuss all pending motions, including the motion to compel. At the status conference, the Court orally granted the motion to compel and ordered that OAC was required to follow this Court's Order and respond to Banded's discovery requests regardless of their subjective belief regarding the merits of the case and counsel for OAC agreed to a 10 day time period for compliance. The oral ruling was memorialized in the Court's Order dated August 3, 2016 [Doc. No. 41].

On the August 5, 2016 deadline, OAC provided its (i) Responses to Plaintiff's First Request for Production of Documents (herein "Responses") and (ii) accompanying documents Bates labeled OAC 00001 through 00085 (herein "Document Production"). The Responses are hereto attached as *Exhibit 1* to this Memorandum. The Document Production is hereto attached as *Exhibit 2* to this Memorandum. Six of the Responses were identical being "OAC has produced documents responsive to this request within the documents bates labeled OAC 000001-000085" and the seventh Response, as to the $100,000 Collateral Evaluation and Assessment Fee charged by OAC, was "OAC does not possess documents responsive to this Request" (See *Exhibit 1*).

The Document Production contained significant and material redactions to the majority of the billing statements from the law firms McDermitt, Will & Emery LLP ("WM&E") [*Exhibit*

*2* - OAC 00001-00025] and Burr Forman LLP ("Burr") [*Exhibit 2* - OAC 00026-00058]. No privilege log was provided for any information withheld pursuant to Rule 26(b)(5)(A). Counsel for the parties had numerous discussions by telephone and email regarding the Document Production, the requirements of Rule 26(b)(5)(A) and the burden of a party asserting a privilege to establish its existence and applicability. Counsel for OAC advised by email that the billing statements of MW&E and Burr were redacted on the basis of the attorney/client privilege and work product doctrine. Counsel for OAC further advised that Rule 26(b)(5)(A) does not require the production of a privilege log but instead provides that a party must explain the basis for the asserted privilege and describe the nature of the information not disclosed. Notwithstanding the foregoing, counsel for OAC requested that more time to provide additional documentation related to the privilege asserted along with further documents and offered to produce a detailed privilege log no later than August 12, 2016.

On August 11, 2016, OAC produced the Burr and OAC engagement letter as an additional document   [Bates labeled OAC 00086 through 00091 and attached hereto as *Exhibit 3*]. The Burr engagement letter stated that OAC was the client and that none of OAC's affiliated corporations will be considered clients but had one line redacted regarding the client and another entity to be formed. [*See* Exhibit 3 – OAC 000086].  No privilege logs were produced.

On August 15, 2016, OAC again produced additional documents [Bates labeled OAC 00092 - 00095] which are hereto attached as *Exhibit 4.* Included in these documents was an engagement letter between MW&E and Peak Rock Capital LLC ("Peak Rock") dated February 4, 2013 which specifically stated that the MW&E representation of Peak Rock does not extend to its parents, subsidiaries, employees, officers, directors, shareholders, partners or other affiliates (*See* Exhibit 4 – OAC 00092-00093).   Moreover, the redacted MW&E statements produced by

3

OAC are billed to Peak Rock Capital in Austin, TX except for two invoices sent to Hunter's Specialties, Inc. ("Hunter's Specialties") in Cedar Rapids, IA. No invoices were addressed to OAC by MW&E. Hunter's Specialties is a completely unknown entity to Plaintiff and has never been disclosed how it is related to Peak Rock or OAC in this matter.

On August 15, 2016 and based upon the foregoing, counsel for Plaintiff by email expressed serious concerns to counsel for OAC about the redactions made, privileges being claimed and that a privilege log still had not been provided with the necessary information required by Rule 26(b)(5)(A).

On August 16, 2016, Counsel for OAC emailed counsel for Plaintiff related to the required information requested and produced a purported privilege log for the MW&E statements along with revised redactions to MW&E statements. The email, MW&E privilege log and the revised MW&E redacted statements (Revised Bates labeled OAC 00001 through 00025) are collectively attached hereto as *Exhibit 5*. The Privilege log was titled "OAC Privilege Log" and contained categories of <u>Bates No.</u> (already known), <u>Date of Entry</u> (already known), the <u>Privilege Asserted</u> as "AC/WP" and the <u>Reason Privilege Applies</u> was "*Redacted information reveals legal advice, strategy, and mental impressions, conclusions, theories or opinions*" cut and pasted 53 times in a row. The MW&E privilege log did not state who was the party asserting the privilege but counsel for OAC later confirmed by email dated August 18, 2016 that "Relative to the MWE invoices, the privilege is being claimed by OAC and/or Peak Rock, or counsel on behalf of OAC or Peak Rock".

On August 18, 2016, OAC produced a privilege log titled "OAC Privilege Log – Burr & Forman Invoices". The Burr privilege log is hereto attached as *Exhibit 6*. It is almost identical to the MW&E privilege in category form and again has "*Redacted information reveals legal*

4

*advice, strategy, and mental impressions, conclusions, theories or opinions*" cut and pasted 122 times in a row.

No privilege log provided or correspondence from counsel for OAC has ever stated the general subject matter of the redactions made other than "invoices for legal services" (see Taube Email – Exhibit 5), as such, the critical and required information for Plaintiff to assess whether a privilege even applies to the legal work or for whom it was performed remains completely unknown.

## LAW AND ARGUMENT

Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure provides that a party may move for an order compelling responses to requests for production of documents where the party upon which such requests has been served fails to respond as required by Rule 34 of the Federal Rules of Civil Procedure. Pursuant to Rule 37(a)(4), an incomplete response must be treated as a failure to respond.

### I. BANDED IS ENTITLED TO OBTAIN RELEVANT, NON-PRIVILEGED DISCOVERY

Rule 26(b)(1) sets forth the scope of discovery and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). As the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Determining the scope of discovery is within the trial court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). There can be no dispute of the relevancy of the discovery sought in this matter. The unredacted documents sought by Banded are the same documents which OAC intends to rely upon that evidences, supports and justifies the massive amount of "legal/other fees" that were improperly demanded in the May 7,

2015 loan payoff statement. The MW&E and Burr invoices are not tangentially "at issue" in this case, they are part of the core issue of this case. When a party produces redacted documents, the requesting party may "move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B); see also *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 890-91 (M.D. Tenn. 2010) ("Rule 37(a) allows a party to file a motion to compel if the opposing party fails to produce relevant, non-privileged documents.").

## II. THERE IS NO WORK PRODUCT DOCTRINE APPLICABLE TO THE REDACTED DOCUMENT PRODUCTION

OAC or counsel for OAC has claimed "WP" on 166 of its 175 privilege log entries. The work-product doctrine protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process. *In re Powerhouse Licensing*, LLC, 441 F.3d 467 (6th Cir.2006). The doctrine embodies the policy that attorneys, doing the sort of work that attorneys do to prepare a case for trial, should not be hampered by the prospect that they might be called upon at any time to hand over the results of their work to their adversaries. *Downing v. Bowater, Inc.*, 846 S.W.2d 265, 267 (Tenn.Ct.App.1992). Rule 26(b)(3) protects (1) "documents and tangible things"; (2) "prepared in anticipation of litigation or for trial"; (3) "by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). To determine whether a document has been prepared "in anticipation of litigation," and is thus protected work-product, there are two essential elements to consider: (1) whether that document was prepared "because of" a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable. *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir.2006). If a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of

6

protection, but the burden is on the party claiming protection to show that anticipated litigation was the "driving force behind the preparation of each requested document." *Roxworthy* at 595. Anticipation of litigation or trial preparation is not cited in a single "reason privilege applies" in OAC privilege logs (*see* Exhibit 5 and Exhibit 6 – privilege logs).

In the present case, the redacted billing invoices date back to March of 2015 (before OAC even acquired the Loan Documents)[1] and continue through and after the loan payoff made on or about May 12, 2015.   This case was filed in March of 2016.  During the requisite time period of the redacted billing statements this was purely a commercial transaction for OAC and it only held the loan documents for a mere 35 days before payoff.    It is completely groundless for OAC or its counsel to assert a privilege of the work-product doctrine for the legal billing statements it incurred a year predating the present litigation and were ostensibly related to the commercial transaction of purchasing Loan Documents.   Accordingly, there can be no work-product doctrine applicable to the redacted invoices from that requisite time period.

### III. ANY PRIVILEGE CONTAINED IN THE REDACTED BILLING STATEMENTS HAS BEEN WAIVED BY VOLUNTARY DISCLOSURE

As stated before, it is facially clear from the engagement letters and billing statements that Peak Rock, and Peak Rock alone, was the client of MW&E, and that OAC, and OAC alone, was the client of Burr (*See* Exhibit 1- billing statements, Exhibit 3 and Exhibit 4 – Engagement Letters).   MW&E invoices were sent Peak Rock (or other third parties such as Hunter's Specialties) and Burr invoices were sent to OAC.   Further, the MW&E invoices contain no less than 7 references to "Peak Rock" (there may be more in redacted portions which are unknown)

---

[1] The MW&E invoice has 57.25 hours of billed time (approximately $36,000) that was charged to the loan payoff that predated OAC even acquiring the Loan Documents from Suntrust Bank on April 2, 2015. [*See* Exhibit 2 – OAC 00001-00006].  It is inconceivable how litigation could be anticipated before OAC even purchased the loan documents.

and upon diligently review of the invoices there is not a single reference to OAC. (See Exhibit 1 – OAC 00001 – 000025).

"[t]he burden of establishing the existence of the privilege rests with the person asserting it". *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir.2000).  Claims of attorney-client privilege are "narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit." *United States v. Collis*, 128 F.3d 313, 320 (6th Cir.1997).  As a general rule, the "attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties. *In re Grand Jury Proceedings*, 78 F.3d 251, 254 (6th Cir.1996).  The prevailing view is that once a client waives the privilege to one party, the privilege is waived en toto. *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289 (6th Cir.2002) citing *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414 (3d Cir.1991).  Further, the attorney-client privilege is not absolute, nor does it cover all communications between a client and his or her attorney.  The communications must involve the subject matter of the representation and must be made with the intention that they will be kept confidential. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, (Tenn.Ct.App.2002).

As to the MW&E redacted invoices, the "AC/WP" privileges asserted have been claimed by "OAC and/or Peak Rock, or counsel on behalf of OAC or Peak Rock".  This is simply a legal impossibility.  This tactic cuts to the very core issue in this case, which OAC has now affirmatively confirmed, that there may be two clients (who are separate distinct legal entities) or there may be just one client on these MW&E invoice.  OAC clearly feels it does not have to address the issue at this time of who was the client back in 2015 on these legal invoices and is apparently leaving its options open to later make that choice as best suits it in this litigation.

This Court cannot allow this approach. OAC has no legal basis to assert an attorney-client privilege in the MW&E invoices for which Peak Rock was the client. And equally, Peak Rock has no basis to assert an attorney-client privilege in the MW&E invoices once those invoices have clearly been voluntarily turned over to OAC (or to Hunter's Specialties).

As to the Burr redacted invoices, the "AC/WP" privileges asserted have been claimed by OAC and counsel for OAC. There are over 35 redacted time entries for conversations with attorneys at MW&E or reviewing correspondence from attorneys at MW&E and the content of has been redacted. Several entries have been redacted in their entirety. (See Exhibit 2 – OAC 00040- 00060). Firstly, there is nothing inherently privileged concerning attorneys (from same or different law firms) having conversations. Secondly, there can be no privilege asserted regarding counsel for OAC having discussions with counsel for Peak Rock. Thirdly, any conversations or discussions which involved non-legal professionals at Sprock Capital Advisory or Mackinac Partners also waive any applicable privilege[2]. Lastly, Burr was paid for its legal invoices by Hunter's Specialties (see Exhibit 2 – OAC 00060). To the extent that any Burr legal invoices were disclosed to Peak Rock, Peak Rock's counsel or Hunter's Specialties then any applicable privilege has again been waived.

### IV. OAC HAS PLACED THE VALIDITY, REASONABLENESS AND NECESSITY OF THE "LEGAL/OTHER FEES" CLEARLY "AT ISSUE" IN THIS LITIGATION AND CAN NOT CLAIM SHIELD THE DOCUMENTS SUPPORTING SUCH AS ATTORNEY-CLIENT PRVILEGED OR WORK -PRODUCT DOCTRINE

OAC seeks to shield the substantial amount of redactions made in the Document Production related to the MW&E and Burr invoices under the theory of attorney-client privilege

---

[2] Sprock Capital Advisory LLC was employed by Peak Rock, not OAC, and has an executed engagement letter (See Exhibit 2 – OAC 00070- 00075). $40,000.00 of Sprock fees were charged by OAC in the payoff letter.

9

and/or the work product doctrine. The redacted information presumably details the tasks that were performed by legal counsel and then demanded and charged by OAC under the loan documents it acquired from Suntrust Bank as permissible, necessary, reasonable legal expenses. The redacted information is not privileged because OAC and/or Peak Rock have waived both privileges, to the extent they were even applicable, by placing the content of those billing statements at issue in this case.

Parties cannot place a matter "at issue" in litigation and then use claims of privilege to prevent their adversary from seeing the basis for it. *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888 (M.D. Tenn. 2010). In *Reitz*, the Court ordered the City to produce the otherwise privileged interview memoranda, the court relied on the well-established principle that the City, which had used the report as a sword in its affirmative defense, could not the use privilege, stating "[w]hen a party uses 'the content of privileged communications' offensively, it is troublesome for the party to subsequently claim privilege "as a shield to prevent ... testing of the claim..." *Id.* at 892 *(citing Ross v. City of Memphis,* 423 F.3d 596, 605 n.5 (6th Cir. 2005) ("a privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications"). Many courts have applied this "sword and shield" principle to require production in numerous circumstances. *See e.g., In re Powerhouse Licensing,* 441 F.3d 467 (6th Cir. 2006); *Ideal Elec. Sec. Co., Inc. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 146 (D.C. Cir. 1997); and *Pillsbury Winthrop Shaw Pittman LLP v. Brown Sims, PC,* No. 4:09-mc-365, 2010 WL 56045, (S.D. Tex.Jan. 6, 2010).

This very issue of compelling unredacted invoices for legal services claimed by a party has been analyzed and discussed in depth by Judge Vescovo. *First Horizon National Corporation v. Certain Underwriters at Lloyd's*, Case No. 2:11-cv-02608, 2013 WL

11934936 (W.D. Tenn., October 17, 2013). In that case, First Horizon sought to have the Defendants pay a significant amount of legal fees incurred by First Horizon on a contractual basis. First Horizon would only produce redacted billing statements to support the reasonableness and necessity of the legal fees it sought. Judge Vescovo adopted the "sword and shield" principal and the "at issue" aspect in fee dispute cases stating that First Horizon has placed its legal costs at issue by alleging that it incurred the demanded amount of fees and by producing its bills (in redacted form) as evidence of this amount. *Id.* At 6\*. By producing redacted legal billings as evidence of their claim, First Horizon selectively discloses information on which it relies to assert the amount of its claim that ought in fairness to be disclosed in full so that the Defendants can challenge it. *Id.* At 7\*. Further, "the reasonableness of any portion of the billing statements can only be determined by examining all billing statements pertaining to the legal services provided as a whole." *Id.* At 7\* citing *Ideal Elec.*, 129 F.3d at 146. First Horizon was ordered to produce full unredacted legal invoices and directed the parties to confer on an appropriate confidentiality agreement/ protective order for the unredacted statements given their sensitive nature.

     There can be no more fitting an analysis to apply to the present case. OAC has produced redacted billing statements in response to Banded's request for production of documents upon which OAC intends to rely to support its claim that the $461,000 in "legal/other fees" are valid, reasonable and necessary as required by the Loan Documents. MW&E legal bills total $95,000 and of that $61,000 of time entries have been redacted. That amounts to 65% of the entire amount of MW&E fees sought are to be shielded from analysis and inquiry by Banded. Burr legal bill totals $61,000 and of that $24,000 of time entries have been redacted. That amounts to 40% of the entire amount of Burr fees sought

are to be shielded from analysis and inquiry by Banded.  "Trust me" is not a substitute for proof. *Pillsbury* at 34*.  The scope of the waiver by disclosure is defined by the "fairness doctrine," which aims to prevent the prejudice and distortion that may be caused by one party's selective disclos[ure] of otherwise protected information. *First Horizon* at *5 citing *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 787 (Tenn. Ct. App. 1999).

The notion that OAC can demand over $461,000 in "legal/other fees" and refuse documentation to the Receiver back in May 2015 and now only produce redacted statements in the present litigation does not comport with any equitable notion of "fairness".  Absent full production of unredacted legal statements, Banded is extremely prejudiced leaving it with no viable path or recourse to challenge the fees in dispute.

## V.    THE PRIVILEGE LOGS ARE GROSSLY INADEQUATE AS TO THE REDACTIONS MADE

The amount, nature and content of the redactions made are especially biased and are too numerous to address on a line by line analysis.  As the Court can see by merely a cursory review of OAC 00001- 000057, there are countless redactions such as:

- One attorney confer with another attorney re:
- Attend to issues with
- Phone call with [list of individuals] **and others** re:
- Review correspondence re:
- Conduct telephone conference re:
- Coordinate matters relating to
- Conference call re:
- Review multiple correspondence re:

There are also several entries redacted in their entirety.  The massive amount of redactions must also be viewed with the fact that for example MW&E has 12 different attorneys billing on one single redacted invoice for 124.25 hours totaling $78,096.25 [at *$628.54* average hourly rate] and ascertaining the information necessary to challenge those fees is impossible,

12

if not impractical at best. The Privilege Logs provided by counsel for OAC (see Exhibit 5 and 6) have been previously discussed, but warrant noting again, because a single legal definition of when privilege "may apply" is not what Rule 26(b)(5)(A) contemplates. The privilege logs can be fittingly be summarized as providing Banded the following information: (i) they are legal bills, (ii) done by attorneys, (iii) on these dates, and (iv) reason for privilege applies is "Redacted information reveals legal advice, strategy, and mental impressions, conclusions, theories or opinions". A blanket assertion of privilege is insufficient and improper, and a party withholding requested documents on the basis of privilege must generally produce for the requesting party a detailed privilege log with respect to each document. *Particularity of description; blanket assertion of privilege*, 10 Fed. Proc., L. Ed. § 26:111 (June 2016 Update). Upon review of the privilege logs (see Exhibit 5 and 6) is facially clear that it is nothing more than a blanket privilege and that no pertinent and required details have been provided. Each particular entry must be judged on its own merits for the applicability of any asserted privilege and when there are multiple parties with multiple attorneys clearly addressing multiple issues then a single reason for applicability is wholly insufficient to throw an umbrella of protection over all. As such the logs are inadequate to sustain any privilege asserted by OAC and/or Peak Rock and the unredacted documents must be produced.

## CONCLUSION

Unless this Court orders the full immediate production of the unredacted legal statements for all the foregoing legal and factual reasons set forth, then OAC has once again achieved its goal to advance its case while stonewalling Banded's efforts to pursue its cause of action to an adjudication on the merits. This Court must sanction the Defendant for the fees and time incurred by Banded again to simply obtain the relevant discovery and information that the Rules

provide it. When this Court ordered OAC to respond to Banded's requests for production fully within 10 days, Banded should not then be forced to extract the required information from OAC and continually wait for the documents and information to trickle in for almost two weeks past the deadline imposed by the Court. And even then, the document production and information provided by OAC contains improperly claimed privileges and are not complaint with Rule 26(b)(5)(A).

Accordingly, Banded respectfully request that its Motion to Compel be granted and that (i) Banded be awarded its costs and attorneys' fees for bringing this motion in accordance with Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure; and (ii) OAC be ordered to immediately provide full and complete unredacted Document Production; or, in the alternative, be barred from asserting a claim for any defense of the disputed "legal/other fees" based upon the unredacted records it refuses to produce.

        Respectfully submitted,

        **BUTLER SNOW LLP**

        */s/ R. Campbell Hillyer*
        R. Campbell Hillyer (22124)
        Michael C. McLaren (28277)
        6075 Poplar Avenue, Suite 500
        Memphis, TN 38119
        (901) 680-7200
        (901) 680-7201 facsimile
        Cam.Hillyer@butlersnow.com
        Michael.McLaren@butlersnow.com
        *Attorneys for Banded Finance, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have filed the foregoing document with the Court's CM/ECF system which shall transmit a true and correct copy of the foregoing document upon the following:

>Emily C. Taube (TN #019323)
>BURR & FORMAN LLP
>511 Union Avenue, Suite 2300
>Nashville, TN  37219
>Email: etaube@burr.com

This the 29th day of August, 2016.

*/s/ R. Campbell Hillyer*