## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## AT MEMPHIS

AVERY OUTDOORS LLC
f/k/a BANDED FINANCE LLC,

     **Plaintiff,**

v.                            **Case No. 2:16-cv-02229-JPM-tmp**

PEAK ROCK CAPITAL, LLC, and
OUTDOORS ACQUISITION CO, LLC

     **Defendants.**

## PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

As support for its motion for partial summary judgment, Plaintiff Avery Outdoors LLC f/k/a Banded Finance LLC ("Banded") hereby states as follows:

### INTRODUCTION

This case concerns Defendants' improper acquisition of over $461,512 in impermissible and excessive "legal and other" fees and inflated principal and interest that Defendant Outdoors Acquisition Co., LLC ("OAC") wrongfully charged Avery Outdoors, Inc. ("Avery").  Though OAC contends that all of the disputed fees were properly chargeable under the underlying promissory note, the undisputed facts have already confirmed that a significant portion of the claimed fees were undoubtedly unrecoverable.  Thus, though genuine issues of material fact may exist as to the legitimacy of a portion of the fees currently in dispute, partial summary judgment should be rendered in favor of Banded on the following itemized charges, all of which were undisputedly improper:  (i) the $90,000 in legal fees OAC claimed as a result of legal work

performed by McDermott, Will & Emery ("MWE"); (ii) the $40,000 in fees OAC claimed for work performed by Sprock Capital Advisory ("Sprock"); (iii) the internal and unsubstantiated $100,000 Collateral & Assessment Fee; (iv) the $20,000 in undocumented and alleged OAC "Expenses"; and (v) the inflated pre-acquisition principal and accrued interest that OAC claimed in its May 7, 2015 payoff statement.

As detailed below, these charges were not incurred as a result of work performed by or on behalf of OAC when it was the holder of the note. Nor were they contractually recoverable as a matter of law. Consequently, OAC lacked any contractual right to these fees, and its failure to return the fees to Banded renders it in breach of its contractual obligations. Accordingly, for the reasons that follow, entry of partial summary judgment in favor of Banded on these undisputedly improper charges is warranted.

## STATEMENT OF UNDISPUTED FACTS

### A. The Note

1.  On June 11, 2008, Avery executed a Revolving Promissory Note in the principal amount of $8,000,000 (the "Note") in favor of SunTrust Bank ("SunTrust"). (OAC Counterclaim, ¶12, ECF No. 123.)

2.  Under the Note, Avery was contractually obligated for:

[E]xpenses and costs, including but not limited to, reasonable attorney's fees, that the ***holder*** . . . incurs (i) in collecting or attempting to collect the indebtedness evidenced by this Promissory Note, (ii) in enforcing the Loan Agreement or any deed of trust, mortgage, assignment of rents and leases, security agreement or other collateral that secures this Promissory Note or any guaranty thereof (herein together "Security Documents"), (iii) in protecting the collateral encumbered by the Security Documents, (iv) in defending or asserting the holder's rights in said collateral, and/or (v) with regard to any bankruptcy, reorganization or insolvency proceeding involving this Promissory Note, the Security Documents or said collateral.[1]

---

[1] The Note and the related loan and security agreement is attached as Ex. 1 to OAC's Counterclaim, ECF No. 123-1.

(OAC Counterclaim, ¶13; Ex. 1 to Counterclaim, ECF No. 123-1, PAGE ID 1792)(emphasis added.)

3. Section 9.5 of the Note provides, in part, as follows:

> If an event of Default has occurred and is continuing, Bank may apply any funds in its possession, whether from Borrower account balances, payments, proceeds realized as the result of any collection Accounts or other disposition of Collateral, or otherwise, to the Obligations in such order as Bank shall determine in its sole discretion. ***Any surplus shall be paid to Borrower or other Persons legally entitled thereto.***

(*See* Ex. 1 to OAC Counterclaim, ECF No. 123-1, at Page ID 1806-1807.)

**B. The Receivership Action**

4. On November 13, 2014, SunTrust sued Avery for breach of the Note, commencing a Receivership Action in the Chancery Court of Shelby County, Tennessee before Chancellor Walter Evans (hereinafter the Receivership Action). (OAC Counterclaim, ¶21.)

5. Chancellor Evans appointed John L. Ryder as the receiver (the "Receiver"). (OAC Counterclaim, ¶22.)

**C. OAC's acquisition of the Note and its April 22, 2015 Payoff Letter**

6. On April 2, 2015, SunTrust assigned all of its interests, rights and remedies under the Note to OAC. (*Id.*, ¶22.)

7. As of April 2, 2015, the principal indebtedness under the Note was $1,461,394.94, and the accrued interest was $7,299.59. (*Id.*, ¶29.)

8.      On April 22, 2015, OAC notified the Receiver by letter that, as of April 2, 2015, the indebtedness and other obligations under the Note totaled $1,544,997.03, with the following itemized sums:

| | |
|---|---|
| Principal | $1,461,394.94 |
| Interest | $7,299.50 |
| Other Fees and Expenses | $76,302.59 |
| TOTAL | $1,544,997.03 |

(*See Id.*, ¶55; Ex. 4 to OAC Counterclaim, ECF No. 123-4, PAGE ID 1849-1850.)[2]

9.      The April 22, 2015 loan payoff letter from OAC also claimed "additional fees and expenses (including without limitation attorneys' fees and expenses)" that had been incurred since April 2, 2015.  That letter did not disclose, however, any amounts or details regarding such fees.  (*Id.*)

D.  **The Banded Loan**

10.     On April 22, 2015, OAC informed the Receiver that, pursuant to Tennessee Uniform Commercial Code § 47-9-101 *et seq*., it intended to conduct a public sale of the collateral secured by the Note, to be held on May 11, 2015 (the "TUCC sale").   (OAC Counterclaim, ¶54; Ex. 3 to OAC Counterclaim, ECF No. 123-3.)

11.     On April 30, 2015, Banded submitted a letter of intent to the Receiver to provide short term financing (the "Banded Loan") to Avery that would enable Avery to pay off the Note (then owed to OAC).  (Banded Verif. Compl., ¶22-24, ECF No. 1-2.)

12.     The Receiver subsequently requested OAC to update the final payoff amount for the Note.  (*Id.*, ¶25.)

E.  **The May 7, 2015 Payoff Statement**

13.     On or about May 7, 2015, OAC sent the Receiver a payoff statement.  (*Id.*, ¶26;

---

[2] A copy of the April 22, 2015 letter is attached as Ex. 3 to OAC's Counterclaim, ECF No. 123.

Ex. 6 to OAC Counterclaim., ECF No. 123-6.)

14.     In its May 7, 2015 payoff statement, OAC claimed that the principal and accrued interest as of April 2, 2015 was $1,484,198.33.  (Ex. 6 to OAC Counterclaim., ECF No. 123-6.)

15.     OAC had previously represented that the principal and accrued interest as of April 2, 2015 was $1,468,694.44, $15,503.89 less than the amount OAC claimed in its May 7, 2015 payoff statement.   (OAC Counterclaim, ¶55; Ex. 4 to OAC Counterclaim, ECF No. 123-4, PAGE ID 1849-1850.)

16.     OAC's May 7, 2015 payoff statement provided no explanation as to why the principal and accrued interest as of April 2, 2015 increased by $15,503.89.  (Ex. 6 to OAC Counterclaim., ECF No. 123-6.)

17.     The May 7, 2015 payoff statement also included the following additional amounts owed, allegedly incurred between April 2, 2015 (the date OAC acquired the Note) and May 8, 2015: (i) Accrued Interest ($9,804.32); and (ii) Legal and Other fees ($385,210.29).  (*Id*.)

18.     This second category, the "Legal and Other Fees," was further itemized:

| | |
|---|---|
| McDermott, Will & Emery | $90,000 |
| Burr Forman | $65,000 |
| Mackinac Partners | $68,056.12 |
| Sprock Capital Advisory | $40,000 |
| Outdoor Acquisition Co Expenses | $20,000 |
| Collateral Evaluation & Assessment Fee | $100,000 |
| Late Fee on Interest | $2,154.17 |
| **TOTAL** | **$385,210.29** |

(*Id*.)

### F.   The Receiver's Payment of the Disputed Fees

19.     Upon receipt of OAC's May 7, 2015 payoff demand, the Receiver objected to and disputed the alleged legal and other fees.  (Verified Compl., ¶31, ECF No. 1-2.)

20.     The parties were unable to resolve their dispute over the contested fees.  (*Id.*, ¶32.)

21.     The Receiver subsequently requested to close the Banded Loan, and the Chancery Court approved the request on May 7, 2015.  (*Id.*, ¶33-34.)

22.     The following day, the Receiver paid OAC, under protest and economic duress, the full amount of the claimed indebtedness owed under the Note, including the inflated principal and alleged accrued interest through April 2, 2015 and the disputed $385,210.29.  (*Id.*, ¶35.)

## G. <u>Defendant Peak Rock Capital LLC ("Peak Rock")</u>

23.     Peak Rock is a separate entity from OAC and has no ownership in OAC or OAC's parent.  (*See* Peak Rock Bates No. 004486, attached hereto as Ex. A.)

24.     During the Receivership Action, Peak Rock, not OAC, submitted a letter of intent for the purchase of certain assets of Avery. (Verif. Compl., ¶14, ECF No. 1-2.)

## H. <u>Peak Rock's Engagement with MWE</u>

25.     Peak Rock, not OAC, had a written contractual engagement with MWE.  (*See* MWE Engagement Letter, Bates Nos. OAC 000092-000093, attached hereto as Ex. B.)

26.     Peak Rock's engagement letter with MWE expressly states "[MWE's] representation of [Peak Rock] does not extend to [Peak Rock's] parents, subsidiaries, employees, officers, directors, shareholders, partners or other affiliates." (*Id.*)

27.     Peak Rock's engagement letter also states that Peak Rock is MWE's sole client and the responsible party for the fees incurred pursuant to the contractual engagement.  (*Id.*)

## I. <u>The MWE Invoices</u>

28.     OAC has produced three MWE invoices (Bates Nos. OAC 1-25) that allegedly support and/or justify its claimed entitlement to the $90,000 it charged for MWE's legal services.

(*See* OAC's Resp. No. 2 to Banded's First Set of Requests for Production of Documents, attached hereto as Ex. C.)

29.     MWE Invoice No. 2770659 (hereinafter "MWE Invoice 1") includes charges for 124.25 hours of legal services which total $78,097.90.  (*See* Bates Nos. OAC 000001 – 000013, attached hereto as Ex. D.)

30.     MWE Invoice 1 was billed to Peak Rock Capital, Attn: Spencer Moore.  (*Id.*)

31.     57.25 hours of the legal services itemized in MWE Invoice 1 were performed prior to April 2, 2015, the date OAC acquired the Note.  (*Id.*)

32.     MWE Invoice No. 2791341 (hereinafter "MWE Invoice 2"), dated July 20, 2015, totals $17,228.65, and was billed to Hunter's Specialties, Inc., located at 6000 Huntington Ct. NE, Cedar Rapids, IA 52402.  (*See* Bates Nos. OAC 000014 – 000021, attached hereto as Ex. E.)

33.     MWE Invoice No. 2822368 (hereinafter the "MWE Invoice 3"), dated October 12, 2015, contains $1,060.75 in charges for legal services provided by MWE in September of 2015, over five months after the Note was paid off.  (*See* Bates Nos. OAC 000023 – 000025, attached hereto as Ex. F.)

34.     MWE Invoice 3 was also billed to Hunter's Specialties, Inc., located at 6000 Huntington Ct. NE, Cedar Rapids, IA 52402.  (*Id*.)

**J.   Peak Rock's Engagement with Sprock**

35.     Peak Rock, not OAC, had a written contractual engagement with Sprock Capital Advisory, LLC ("Sprock").  (*See* Sprock Engagement Letter, Bates Nos. OAC 000070-000079, attached hereto as Ex. G.)

36.     The Sprock engagement states that Peak Rock was the sole client and the responsible party for the fees incurred pursuant to the engagement.  (*Id.*, at OAC 000070, 000073.)

37.     Peak Rock's engagement letter with Sprock expressly states as follows:

Sprock Capital Advisory LLC and Peak Rock Capital agree and acknowledge that . . . "(i) ***any fee [or] expense [incurred by Sprock] shall be paid and satisfied for all purposes by Peak Rock Capital, (ii) Sprock Capital Advisory LLC will look solely to Peak Rock Capital for the satisfaction of any and all such fees, expenses . . .***

(*Id*., at OAC 000073) (emphasis added.)

## K. **The Sprock Invoice**

38.     OAC has produced the sole invoice from Sprock (Bates Nos. Peak Rock 05467-05468) that supports and/or justifies the $40,000 it claims to have incurred for Sprock's professional services.  (*See* Bates Nos. Peak Rock 05467-05468, attached hereto as Ex. H.)

39.     The Sprock invoice is dated May 8, 2015 and totals $51,235.  (*Id.*)

40.     The Sprock invoice was billed to Mr. Peter Leibman, Peak Rock Capital LLC, 13413 Galleria Circle, Suite Q-300, Austin, Texas 78738.  (*Id*.)

## L. **The 100,000 "Collateral Evaluation and Assessment" Fee**

41.     OAC claimed a contractual right to an alleged $100,000 "Collateral Evaluation and Assessment Fee" in its May 7, 2015 payoff demand.  (Ex. 6 to OAC Counterclaim, ECF No. 123-6.)

42.      No documents exist to support the alleged $100,000 "Collateral Evaluation and Assessment Fee."  (*See* Ex. C, OAC Resp. No. 7 to Banded's Requests for Production.)

## M. **The $20,000 "OAC Expense"**

43.     OAC claimed a contractual right to an alleged $20,000 "OAC Expenses" in its May 7, 2015 payoff demand.  (Ex. 6 to OAC Counterclaim, ECF No. 123-6.)

44.     To support this alleged expense, OAC has produced one invoice from Clarion Security LLC that totals $693.75 for armed guard services that were provided at Avery's headquarters between April 19 and April 25, 2015.  (*See* OAC 00085, attached hereto as Ex. I.)

45.     No additional documents exist to support the alleged $20,000 charge. (*See* Ex. C, OAC Resp. No. 6 to Banded's Requests for Production.)

## LAW AND ARGUMENT

### A.  Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment, the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am. .,* 442 F.3d 953, 955-56 (6th Cir.2006). In order to defeat a summary judgment motion, the nonmoving party "must show sufficient evidence to create a genuine issue of material fact." *Prebilich-Holland v. Gaylord Ent. Co.,* 297 F.3d 438, 442 (6th Cir.2002) (citing *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir.1990)).  The nonmoving party must provide more than a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). In other words, the nonmoving party must present evidence sufficient to permit a reasonable jury to find in its favor. *Id.* Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

**B. Banded is entitled to partial summary judgment on its breach of contract claim.**

As the holder of the Note, OAC was contractually entitled to the reasonable and necessary expenses and attorney's fees that OAC ***incurred*** in (i) collecting or attempting to collect the indebtedness under the Note; (ii) in enforcing the Note; (iii) in protecting the Collateral that secured the Note; and (iv) in defending or asserting OAC's rights in the Collateral.  The Note did not grant OAC acontractual right to charge Avery any impermissible, unreasonable or unnecessary fees or expenses.  Nor did it grant OAC a contractual right to charge Avery for the fees or expenses of a third party, such as Peak Rock, which was not the holder of the Note and for which OAC was not liable.

As set forth in detail below, OAC undisputedly lacked a contractual right to the MWE fees (totaling $90,000); the Sprock fees (totaling $40,000); the Collateral Evaluation & Assessment fees (totaling $100,000); and the alleged OAC expenses (totaling $20,000), because those fees were not amounts incurred by OAC in connection with its enforcement of any claimed rights under the Note.  *See, e.g., Ernest v. USAA Cas. Ins. Co.,* No. 3:08-CV-72, 2009 WL 803106, at *3 (E.D. Tenn. Mar. 25, 2009)  (recognizing "[i]t is clear that the term 'incurred' means 'to become liable for' or 'to be legally obligated to pay').  OAC also lacked any contractual right to the unsubstantiated and inflated pre-acquisition principal and accrued interest that it overcharged in its May 7, 2015 payoff statement.

OAC was contractually obligated to return to Banded any surplus payments that are not recoverable under the Note.  Indeed, as section 9.5 of the Note makes clear, "[a]ny surplus shall be paid to Borrower or other Persons legally entitled thereto."  *See* ECF No. 123-1, at Page ID 1806-1807.  Because OAC has wrongly retained improper and/or surplus payments that were not recoverable, it is undisputedly in breach of the Note.  Accordingly and for the reasons that

follow, partial summary judgment is warranted on these charges.

## 1. *The $90,000 MWE Fee*

OAC claims that between April 2, 2015 and May 7, 2015 it incurred $90,000 in permissible, reasonable and necessary legal fees for work supposedly performed by MWE. According to OAC, these fees are reasonable and properly chargeable because they were supposedly incurred in connection with OAC's enforcement of its contractual rights under the Note.

OAC's position is entirely without merit, however, as the record makes clear that all legal services provided by MWE were rendered on behalf of Peak Rock, not OAC. Peak Rock, not OAC, had a contractual engagement with MWE and incurred those fees. The engagement letter between MWE and Peak Rock is unmistakable that Peak Rock hired MWE to represent it, not OAC.[3] The MWE engagement letter also expressly disclaims any other entity engagement, clearly stating *"[MWE's] representation of [Peak Rock] does not extend to [Peak Rock's] parents, subsidiaries, employees, officers, directors, shareholders, partners or other affiliates.*"[4]

OAC did not engage MWE, and OAC has failed to any documents in this case that would reflect an engagement of MWE by OAC. Because MWE's engagement was solely with Peak Rock, the $90,000 fee that OAC wrongfully demanded was not chargeable to Avery under the Note. The illegitimacy of these fees is further exemplified by the MWE invoices upon which OAC relies to justify the alleged $90,000 charge, as each invoice was billed to separate legal entities that had no affiliation with OAC, i.e., Peak Rock and Hunter's Specialty, an unaffiliated Iowa company. Thus, all of the services provided by MWE upon which OAC relies as the

---

[3] *See* ECF 49-3, at 92-93 (emphasis added).
[4] *Id.*

justification for its $90,000 demand were incurred by entities other than OAC that were non-holders of the Note.

OAC lacked a contractual right to charge Avery for legal services rendered on behalf of third-parties that were not holders of the Note. It was only entitled to fees or expenses it "incurred," i.e., those for which it was legally obligated to pay. *See, e.g., Ernest v. USAA Cas. Ins. Co.,* No. 3:08-CV-72, 2009 WL 803106, at *3 (E.D. Tenn. Mar. 25, 2009) (recognizing "[i]t is clear that the term 'incurred' means 'to become liable for' or 'to be legally obligated to pay'); *Boettcher v. Shelter Mut. Ins. Co.*, No. 214CV02796JPMDKV, 2016 WL 3212184, at *3 (W.D. Tenn. June 8, 2016) ("The word 'incur' is defined in Black's Law Dictionary as "[t]o suffer or bring on oneself (a liability or expense."). Accordingly, because the MWE fees were not incurred by the holder of the Note, they were not properly chargeable by OAC. OAC's retention of these surplus payments is therefore in violation of its contractual obligations under the Note.

OAC likewise lacked a contractual right to charge Avery for work performed prior to OAC's acquisition of the Note on April 2, 2015 and after the disputed fees were fully paid on May 8, 2015. The MWE invoices that supposedly justify OAC's claimed entitlement to the $90,000 it wrongfully charged Avery include significant charges for legal services provided by MWE prior to April 2, 2015 (the date OAC acquired the Note) and after May 8, 2015 (the date the Note was fully paid). Specifically, MWE Invoice 1 contains 57.25 hours of legal services which were performed prior to April 2, 2015. MWE Invoice 1 contained a total of 124.25 hrs of work which totaled $78,096.25. (*See* Bates Nos. OAC 000001 – 000013, attached hereto as Ex. D.) Though no hourly rates are included on the legal statement, simple mathematical calculation shows that the average hourly rate for MWE Invoice 1 was approximately $628.50/hr. Thus, the wrongfully charged 57.25 hours of work performed before the April 2, 2017 OAC acquisition of

the Note have a corresponding value of over $35,981.  Similarly, MWE Invoice No. 3 contains $1,060 in charges for services provided by MWE in September of 2015, over five months after the Note was satisfied.  (*See* Ex. F.)  These fees are simply unrecoverable as a matter of law because, at the time they were incurred, OAC was not the holder of the Note.

In sum, the undisputed facts confirm that the legal services that OAC contends justified its demand for $90,000 were performed on behalf of non-holders of the Note.  Because these fees were (i) not incurred by OAC and (ii) performed at a time when OAC did not hold the Note, OAC lacked any contractual rights to them, rendering them unrecoverable as a matter of Tennessee contract law.  Accordingly, partial summary judgment should be entered in favor of Banded because there are no genuine issues of material fact regarding the illegitimacy of the $90,000 MWE charge that OAC wrongfully retains.

### 2. *The $40,000 Sprock Fee*

Partial summary judgment should likewise be rendered in Banded's favor on the Sprock fee (totaling $40,000) because these charges are not recoverable by OAC under the Note. Though OAC represented in its May 7, 2015 payoff statement that it incurred $40,000 in professional fees for work performed by Sprock, the record undisputedly reflects that these fees were incurred as a result of the due-diligence work that Sprock performed on behalf of Peak Rock as an interested purchaser of Avery.  Peak Rock, not OAC, engaged Sprock for the exclusive purpose of assisting Peak Rock "for the due diligence investigation of [Avery]."[5] Moreover, Sprock's engagement letter with Peak Rock expressly provides that Peak Rock is responsible for the payment of any fees and expenses incurred by Sprock in connection with its engagement with Peak Rock, expressly stating as follows:

---

[5] *See* Engagement Letter between Peak Rock and Sprock, Ex. G.

Sprock Capital Advisory LLC and Peak Rock Capital agree and acknowledge that . . . "(i) *any fee [or] expense [incurred by Sprock] shall be paid and satisfied for all purposes by Peak Rock Capital, (ii) Sprock Capital Advisory LLC will look solely to Peak Rock Capital for the satisfaction of any and all such fees, expenses . . .*

OAC does not have a separate engagement letter with Sprock; nor has OAC produced any documents that would reflect any engagement of Sprock by OAC.  And, as before, the Sprock invoice upon which OAC relies to justify its entitlement to the $40,000 fee was billed to Peak Rock, not OAC, an undisputed fact that further demonstrates the illegitimacy of the Sprock fee.  Thus, all of the services provided by Sprock - upon which OAC relies as the justification for its $40,000 demand - were conducted by Sprock on behalf of Peak Rock and not OAC.  OAC was not legally obligated to pay the Sprock fee, a fact that is made abundantly clear by the terms of the Sprock engagement.  Consequently, because these fees in no way reflect amounts incurred by OAC in connection with OAC's enforcement of its rights under the Note, partial summary judgment is warranted on this charge.

### 3.   *The $100,000 Collateral Evaluation and Assessment Fee*

Partial summary judgment is likewise appropriate on the $100,000 Collateral Evaluation and Assessment Fee because OAC lacked any contractual rights to this unsubstantiated charge.  OAC lacks any documents to support its representation that it incurred a $100,000 "Collateral Evaluation and Assessment Fee."[6]   OAC has expressly admitted, through its discovery responses, that it lacks any emails, letters, bills, billing summaries, time records, contracts, statements, invoices, or any other documents to support its representation that it incurred a $100,000 fee for Collateral Evaluation and Assessment.  The $100,000 charge for "Collateral Evaluation and Assessment" was either (i) fictitious and never actually incurred by OAC or (ii) duplicative of other costs sought by OAC in its May 7, 2015 payoff demand.  Under any of these

---

[6] *See* Ex. C., at Resp. No. 7.

14

above scenarios, the claimed charges are not recoverable under the Note.   With absolutely no documentation to substantiate the blanket flat $100,000.00 fee wrongfully added to the payoff statement, there can be no material issue of disputed fact regarding this fee and partial summary judgment is warranted on this charge.

### 4. *The $20,000 "OAC Expense" Fee*

Entry of partial summary judgment in Banded's favor is also appropriate on the unsubstantiated $20,000 "expense" charge that OAC claims it incurred during the five weeks it held the Note. As before, OAC has not produced documents that justify its representation of $20,000 in OAC expenses.   In fact, the only document produced by OAC that potentially supports a recoverable OAC "expense" is an invoice totaling $693.75 for armed guard services provided at Avery's headquarters between April 19 and April 25, 2015.   No additional documentation has been provided by OAC.   OAC was not entitled to charge Avery expenses that it did not actually incur.   Accordingly, because OAC cannot demonstrate a contractual basis for the claimed $20,000 fee, partial summary judgment is appropriate.

### 5. *The Inflated Principal and Accrued Interest as of April 2, 2015*

The undisputed facts likewise confirm that OAC improperly overcharged Avery by $15,503.89 when it increased the amount of indebtedness and accrued interest as of April 2, 2015 in its May 7, 2015 payoff statement.   The record reflects that, as of April 2, 2015, the principal and accrued interest under the Note totaled $1,468,694.44 ($1,461,394.94 in principal and $7,299.59 in accrued interest).   OAC acknowledged that amount in its April 22, 2015 letter.   Yet, in its May 7, 2015 payoff statement, OAC improperly increased that amount by $15,503.89, claiming the principal and accrued interest as of April 2, 2015 was $1,484,198.33. OAC provided no explanation as to why the principal and accrued interest as of April 2, 2015 jumped

by $15,503.89.  Nor can it now.  Consequently, summary judgment is warranted on this improper charge.

## **CONCLUSION**

OAC has wrongfully collected over $461,512 in impermissible and excessive fees and $15,503.89 in inflated principal and interest.  Though discovery is ongoing, the undisputed facts have already established that OAC lacked a contractual right to a significant portion of these improper charges, rendering them legally unrecoverable as a matter of law.  Consequently, partial summary judgment should be rendered in favor of Banded because, by refusing to return to Banded the aforementioned fees, OAC has undisputedly breached its contractual obligations under the Note.


Respectfully submitted,

**BUTLER SNOW LLP**

*/s/Michael C. McLaren*
R. Campbell Hillyer (22124)
Michael C. McLaren (28277)
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
(901) 680-7200
(901) 680-7201 facsimile
Cam.Hillyer@butlersnow.com
Michael.McLaren@butlersnow.com
*Attorneys for Banded Finance, LLC*

16

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing document with the Court's CM/ECF system which shall transmit a true and correct copy of the foregoing document upon all counsel of record.

This the 22nd day of May, 2017.

/s/Michael C. McLaren
Michael C. McLaren