## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## MEMPHIS DIVISION

---

|  |  |  |
|---|---|---|
| AVERY OUTDOORS, LLC<br>f/k/a BANDED FINANCE, LLC, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Case No.:  2:16-cv-02229 |
| v. | ) <br> ) | |
| PEAK ROCK CAPITAL LLC, and<br>OUTDOORS ACQUISITION CO., LLC, | ) <br> ) <br> ) | |
| Defendants, | ) <br> ) | |
| and | ) <br> ) | |
| OUTDOOR ACQUISITION CO., LLC | ) <br> ) | |
| Third-Party Plaintiff/Counter-<br>Claimant, | ) <br> ) <br> ) | |
| v. | ) <br> ) | |
| AO LIQUIDATION TRUST INC., f/k/a<br>AVERY OUTDOORS, INC., | ) <br> ) <br> ) | |
| Third-Party Defendant. | ) <br> ) | |

---

## DEFENDANT OUTDOOR ACQUISITION CO., LLC'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

---

In response to Plaintiff Avery Outdoors LLC f/k/a Banded Finance LLC's ("Banded")

Statement of Undisputed Facts in Support of its Motion for Partial Summary Judgment (Doc. No.

134, the "Motion"), Outdoor Acquisition Co., LLC ("OAC") respectfully states as follows:

A.  **The Note**

1.      On June 11, 2008, Avery executed a Revolving Promissory Note in the principal amount of $8,000,000 (the "Note") in favor of SunTrust Bank ("SunTrust"). (OAC Counterclaim, ¶12, ECF No. 123.)

**RESPONSE:**  Undisputed for the purpose of ruling on Banded's Motion only.

2.      Under the Note, Avery was contractually obligated for:

[E]xpenses and costs, including but not limited to, reasonable attorney's fees, that the **holder** . . . incurs (i) in collecting or attempting to collect the indebtedness evidenced by this Promissory Note, (ii) in enforcing the Loan Agreement or any deed of trust, mortgage, assignment of rents and leases, security agreement or other collateral that secures this Promissory Note or any guaranty thereof (herein together "Security Documents"), (iii) in protecting the collateral encumbered by the Security Documents, (iv) in defending or asserting the holder's rights in said collateral, and/or (v) with regard to any bankruptcy, reorganization or insolvency proceeding involving this Promissory Note, the Security Documents or said collateral.[1]

(OAC Counterclaim, ¶13; Ex. 1 to Counterclaim, ECF No. 123-1, PAGE ID 1792)(emphasis added.)

**RESPONSE:**  Undisputed for the purpose of ruling on Banded's Motion only.

3.      Section 9.5 of the Note provides, in part, as follows:

If an event of Default has occurred and is continuing, Bank may apply any funds in its possession, whether from Borrower account balances, payments, proceeds realized as the result of any collection Accounts or other disposition of Collateral, or otherwise, to the Obligations in such order as Bank shall determine in its sole discretion. **Any surplus shall be paid to Borrower or other Persons legally entitled thereto.**

(See Ex. 1 to OAC Counterclaim, ECF No. 123-1, at Page ID 1806-1807.)

---

[1] The Note and the related loan and security agreement is attached as Ex. 1 to OAC's Counterclaim, ECF No. 123-1.

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

**B.  The Receivership Action**

4.  *On November 13, 2014, SunTrust sued Avery for breach of the Note, commencing a Receivership Action in the Chancery Court of Shelby County, Tennessee before Chancellor Walter Evans (hereinafter the Receivership Action). (OAC Counterclaim, ¶21.)*

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

5.  *Chancellor Evans appointed John L. Ryder as the receiver (the "Receiver"). (OAC Counterclaim, ¶22.)*

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

**C.  OAC's acquisition of the Note and its April 22, 2015 Payoff Letter**

6.  *On April 2, 2015, SunTrust assigned all of its interests, rights and remedies under the Note to OAC. (*Id., *¶22.)*

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

7.  *As of April 2, 2015, the principal indebtedness under the Note was $1,461,394.94, and the accrued interest was $7,299.59. (*Id., *¶29.)*

**RESPONSE:** Disputed.   The principal indebtedness under the Note, along with the accrued interest as of April 2, 2015, was $1,484,198.33.  (*See* Doc. No. 123-6.)

8.  *On April 22, 2015, OAC notified the Receiver by letter that, as of April 2, 2015, the indebtedness and other obligations under the Note totaled $1,544,997.03, with the following itemized sums:*

| Principal | $1,461,394.94 |
| Interest | $7,299.50 |
| Other Fees and Expenses | $76,302.59 |

| TOTAL | $1,544,997.03 |
|---|---|

(See Id., ¶55; Ex. 4 to OAC Counterclaim, ECF No. 123-4, PAGE ID 1849-1850.)[2]

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

9.      The April 22, 2015 loan payoff letter from OAC also claimed "additional fees and expenses (including without limitation attorneys' fees and expenses)" that had been incurred since April 2, 2015. That letter did not disclose, however, any amounts or details regarding such fees. (Id.)

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

**D.  The Banded Loan**

10.     On April 22, 2015, OAC informed the Receiver that, pursuant to Tennessee Uniform Commercial Code § 47-9-101 et seq., it intended to conduct a public sale of the collateral secured by the Note, to be held on May 11, 2015 (the "TUCC sale"). (OAC Counterclaim, ¶54; Ex. 3 to OAC Counterclaim, ECF No. 123-3.)

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

11.     On April 30, 2015, Banded submitted a letter of intent to the Receiver to provide short term financing (the "Banded Loan") to Avery that would enable Avery to pay off the Note (then owed to OAC). (Banded Verif. Compl., ¶22-24, ECF No. 1-2.)

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

12.     The Receiver subsequently requested OAC to update the final payoff amount for the Note. (Id., ¶25.)

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

---

[2] A copy of the April 22, 2015 letter is attached as Ex. 3 to OAC's Counterclaim, ECF No. 123.

### E.  The May 7, 2015 Payoff Statement

13.   *On or about May 7, 2015, OAC sent the Receiver a payoff statement. (*Id.*, ¶26; Ex. 6 to OAC Counterclaim., ECF No. 123-6.)*

**RESPONSE:** Disputed.   OAC sent the Receiver a payoff statement at approximately 9:21 a.m., CST, on May 6, 2015.  *See* Banded Production 005426, Email Correspondence from Bob Goodrich to John Ryder, May 6, 2015 (the "May 6, 2015 Email"), attached to OAC's Response to Banded's Motion as **Exhibit F**.

14.   *In its May 7, 2015 payoff statement, OAC claimed that the principal and accrued interest as of April 2, 2015 was $1,484,198.33. (Ex. 6 to OAC Counterclaim., ECF No. 123-6.)*

**RESPONSE:** Disputed.  OAC sent the Receiver a payoff statement at approximately 9:21 a.m., CST, on May 6, 2015.  *See* Banded Production 005426, attached to OAC's Response to Banded's Motion as **Exhibit F**.

15.   *OAC had previously represented that the principal and accrued interest as of April 2, 2015 was $1,468,694.44, $15,503.89 less than the amount OAC claimed in its May 7, 2015 payoff statement. (OAC Counterclaim, 55; Ex. 4 to OAC Counterclaim, ECF No. 123-4, PAGE ID 1849-1850.)*

**RESPONSE:** Disputed.  The payoff statement referred to in this statement of undisputed facts was sent by OAC to the Receiver at approximately 9:21 a.m., CST, on May 6, 2015.  *See* Banded Production 005426, attached to OAC's Response to Banded's Motion as **Exhibit F**.

16.   *OAC's May 7, 2015 payoff statement provided no explanation as to why the principal and accrued interest as of April 2, 2015 increased by $15,503.89. (Ex. 6 to OAC Counterclaim., ECF No. 123-6.)*

**RESPONSE:** Disputed.  The payoff statement referred to in this statement of undisputed facts was sent by OAC to the Receiver at approximately 9:21 a.m., CST, on May 6, 2015.  *See* Banded Production 005426, attached to OAC's Response to Banded's Motion as **Exhibit F**.

17.      *The May 7, 2015 payoff statement also included the following additional amounts owed, allegedly incurred between April 2, 2015 (the date OAC acquired the Note) and May 8, 2015: (i) Accrued Interest ($9,804.32); and (ii) Legal and Other fees ($385,210.29). (*Id.*)*

**RESPONSE:** Disputed.  The payoff statement referred to in this statement of undisputed facts was sent by OAC to the Receiver at approximately 9:21 a.m., CST, on May 6, 2015.  *See* Banded Production 005426, attached to OAC's Response to Banded's Motion as **Exhibit F**.

18.      *This second category, the "Legal and Other Fees," was further itemized:*

| | |
|---|---|
| *McDermott, Will & Emery* | *$90,000* |
| *Burr Forman* | *$65,000* |
| *Mackinac Partners* | *$68,056.12* |
| *Sprock Capital Advisory* | *$40,000* |
| *Outdoor Acquisition Co Expenses* | *$20,000* |
| *Collateral Evaluation & Assessment* | *$100,000* |
| *Late Fee on Interest* | *$2,154.17* |
| ***TOTAL*** | ***$385,210.29*** |

(Id.*)*

**RESPONSE:**  Undisputed for the purpose of ruling on Banded's Motion only.

## F.  The Receiver's Payment of the Disputed Fees

19.      *Upon receipt of OAC's May 7, 2015 payoff demand, the Receiver objected to and disputed the alleged legal and other fees. (Verified Compl., ¶31, ECF No. 1-2.)*

**RESPONSE:** Disputed.  The payoff statement referred to in this statement of undisputed facts was sent by OAC to the Receiver at approximately 9:21 a.m., CST, on May 6, 2015.  *See* Banded Production 005426, attached to OAC's Response to Banded's Motion as **Exhibit F**. Further, on May 7, 2015, the Receiver did not object to the amount of the legal and other fees, and instead indicated that Avery would voluntarily pay the fees. Declaration of Emily Taube, attached to OAC's Response to Banded's Motion as **Exhibit B** ("Taube Decl."), ¶ 4.

20. *The parties were unable to resolve their dispute over the contested fees. (*Id.,*¶32.)*

**RESPONSE:** Disputed.  Based on the May 7, 2015 representations of Avery, through the Receiver, to counsel for OAC that Avery would voluntarily pay the fees at issue, the dispute regarding the fees was resolved as of May 7, 2015.  Taube Decl. ¶¶ 4-6.

21. *The Receiver subsequently requested to close the Banded Loan, and the Chancery Court approved the request on May 7, 2015. (*Id., *¶33-34.)*

**RESPONSE:** Disputed.  By Motion dated May 1, 2015 (the "May 1 Motion"), the Receiver requested permission from the Chancery Court to close the Banded Loan by Thursday, May 7, at 4:00 p.m. CST, but also requested that he be allowed to participate in any public sale of Avery's assets to be held by OAC in the event the Banded Loan did not close.  On May 7, 2015, the Court entered an order granting the May 1 Motion.  *See* Order Approving the Receiver's Participation in Sale of Assets of the Receivership Estate by Lender, attached to OAC's Response to Banded's Motion as **Exhibit G**.

22. *The following day, the Receiver paid OAC, under protest and economic duress, the full amount of the claimed indebtedness owed under the Note,*

*including the inflated principal and alleged accrued interest through April 2, 2015 and the disputed $385,210.29. (*Id., *¶35.)*

**RESPONSE:** Disputed that the Receiver made any payment to OAC under "protest" and/or "economic duress." On May 7 and 8, 2015, the Receiver expressly represented to counsel for OAC that the May 8, 2015 payment was being made voluntarily and not under any protest. Taube Decl. ¶ 4. Additionally, when the Receiver paid the full amount of the indebtedness, including the disputed $385,210.29 in legal and other fees, on May 8, 2015, the wire transfer did not note or otherwise indicate in any way that the payment was made under duress or protest, nor did the Receiver or Banded otherwise indicate that the payment was being made under duress or protest. Taube Decl. ¶ 5. Additionally, OAC Objects to this statement of undisputed facts as improper in that Banded's allegation that the Receiver paid OAC "under protest and economic duress" is a legal conclusion unsupported by any factual allegations. Finally, OAC does not dispute that the Receiver paid OAC the full amount of the indebtedness, including the disputed $385,210.29 in legal and other fees, on May 8, 2015.

### G. __Defendant Peak Rock Capital LLC ("Peak Rock")__

23. *Peak Rock is a separate entity from OAC and has no ownership in OAC or OAC's parent. (*See *Peak Rock Bates No. 004486, attached hereto as Ex. A.)*

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

24. *During the Receivership Action, Peak Rock, not OAC, submitted a letter of intent for the purchase of certain assets of Avery. (Verif. Compl., ¶14, ECF No. 1-2.)*

**RESPONSE:** Disputed. On or about May 21, 2015, Avery Outdoor Products, Inc. ("AOPI"), not Peak Rock, submitted a letter of intent setting forth a proposed offer to purchase

certain assets of Avery.   Declaration of Spencer Moore, attached to OAC's Response to

Banded's Motion as **Exhibit C** ("Moore Decl."), ¶ 2.

### H.  Peak Rock's Engagement with MWE

25.  *Peak Rock, not OAC, had a written contractual engagement with MWE. (See MWE Engagement Letter, Bates Nos. OAC 000092-000093, attached hereto as Ex. B.)*

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

26.  *Peak Rock's engagement letter with MWE expressly states "[MWE's] representation of [Peak Rock] does not extend to [Peak Rock's] parents, subsidiaries, employees, officers, directors, shareholders, partners or other affiliates." (*Id.*)*

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

27.  *Peak Rock's engagement letter also states that Peak Rock is MWE's sole client and the responsible party for the fees incurred pursuant to the contractual engagement. (*Id.*)*

**RESPONSE:** Disputed.   Nowhere does the MWE engagement letter cited by Banded

state that Peak Rock is MWE's "sole client."   Nor does the engagement letter state that Peak

Rock is "the responsible party for the fees incurred pursuant to the contractual engagement."

(*See* MWE Engagement Letter, Bates Nos. OAC 000092-000093, attached as Ex. B to Banded's

Motion.)

### I.  The MWE Invoices

28.  *OAC has produced three MWE invoices (Bates Nos. OAC 1-25) that allegedly support and/or justify its claimed entitlement to the $90,000 it charged for MWE's legal services.  (See OAC's Resp. No. 2 to Banded's First Set of Requests for Production of Documents, attached hereto as Ex. C.)*

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

29.    *MWE Invoice No. 2770659 (hereinafter "MWE Invoice 1") includes charges for 124.25 hours of legal services which total $78,097.90. (See Bates Nos. OAC 000001 - 000013, attached hereto as Ex. D.)*

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

30.    *MWE Invoice 1 was billed to Peak Rock Capital, Attn: Spencer Moore. (*Id.*)*

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

31.    *57.25 hours of the legal services itemized in MWE Invoice 1 were performed prior to April 2, 2015, the date OAC acquired the Note. (*Id.*)*

**RESPONSE:** Disputed.  Only 54.75 of the legal services itemized in MWE Invoice 1 bear dates prior to April 2, 2015.  (OAC000001–000013, attached as Ex. D to Banded's Motion.)

32.    *MWE Invoice No. 2791341 (hereinafter "MWE Invoice 2"), dated July 20, 2015, totals $17,228.65, and was billed to Hunter's Specialties, Inc., located at 6000 Huntington Ct. NE, Cedar Rapids, IA 52402. (See Bates Nos. OAC 000014 - 000021, attached hereto as Ex. E.)*

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

33.    *MWE Invoice No. 2822368 (hereinafter the "MWE Invoice 3"), dated October 12, 2015, contains $1,060.75 in charges for legal services provided by MWE in September of 2015, over five months after the Note was paid off. (See Bates Nos. OAC 000023 - 000025, attached hereto as Ex. F.)*

**RESPONSE:** Disputed.   The Note was paid off on May 8, 2015.  (*See* Banded's Statement of Undisputed Facts, ¶ 22, and OAC's Response thereto.)   MWE Invoice 3 lists

itemized legal services bearing dates between September 14 and September 22, 2015, all of which are less than 5 months after the May 8, 2015 Note payoff date.  (OAC 000014-000021, Ex. E to Banded's Motion.)

34.   *MWE Invoice 3 was also billed to Hunter's Specialties, Inc., located at 6000 Huntington Ct. NE, Cedar Rapids, IA 52402. (Id.)*

**RESPONSE:**  Undisputed for the purpose of ruling on Banded's Motion only.


**J.   Peak Rock's Engagement with Sprock**

35.   *Peak Rock, not OAC, had a written contractual engagement with Sprock Capital Advisory, LLC ("Sprock"). (See Sprock Engagement Letter, Bates Nos. OAC 000070-000079, attached hereto as Ex. G.)*

**RESPONSE:** Disputed.  The Sprock Engagement Letter is signed by a representative of McDermott, Will & Emery.  Further, McDermott, Will & Emery is defined as the "Client" in the Sprock Engagement Letter.  (*See* OAC 000070-000079, Ex. G to Banded's Motion.)


36.   *The Sprock engagement states that Peak Rock was the sole client and the responsible party for the fees incurred pursuant to the engagement. (Id., at OAC 000070, 000073.)*

**RESPONSE:** Disputed.   The Sprock Engagement Letter defines McDermott, Will & Emery as the "Client" thereunder.  Further, the phrase "responsible party for the fees incurred pursuant to the engagement" is used nowhere in the Sprock Engagement Letter.  (*See* OAC 000070-000079, Ex. G to Banded's Motion.)


37.   *Peak Rock's engagement letter with Sprock expressly states as follows:*

*Sprock Capital Advisory LLC and Peak Rock Capital agree and acknowledge that . . . "(i)* **any fee [or] expense [incurred by**

> *Sprock] shall be paid and satisfied for all purposes by Peak Rock Capital, (ii) Sprock Capital Advisory LLC will look solely to Peak Rock Capital for the satisfaction of any and all such fees, expenses . . .*

(Id., *at OAC 000073) (emphasis added.)*

**RESPONSE:**  Undisputed for the purpose of ruling on Banded's Motion only.

### K.  The Sprock Invoice

38.  *OAC has produced the sole invoice from Sprock (Bates Nos. Peak Rock 05467-05468) that supports and/or justifies the $40,000 it claims to have incurred for Sprock's professional services. (See Bates Nos. Peak Rock 05467-05468, attached hereto as Ex. H.)*

**RESPONSE:**  Undisputed for the purpose of ruling on Banded's Motion only.

39.  *The Sprock invoice is dated May 8, 2015 and totals $51,235. (Id.)*

**RESPONSE:**  Undisputed for the purpose of ruling on Banded's Motion only.

40.  *The Sprock invoice was billed to Mr. Peter Leibman, Peak Rock Capital LLC, 13413 Galleria Circle, Suite Q-300, Austin, Texas 78738. (Id.)*

**RESPONSE:**  Undisputed for the purpose of ruling on Banded's Motion only.

### L.  The 100,000 "Collateral Evaluation and Assessment" Fee

41.  *OAC claimed a contractual right to an alleged $100,000 "Collateral Evaluation and Assessment Fee" in its May 7, 2015 payoff demand. (Ex. 6 to OAC Counterclaim, ECF No. 123-6.)*

**RESPONSE:**  Undisputed for the purpose of ruling on Banded's Motion only.

42.   *No documents exist to support the alleged $100,000 "Collateral Evaluation and Assessment Fee." (See Ex. C, OAC Resp. No. 7 to Banded's Requests for Production.)*

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

## M. **The $20,000 "OAC Expense"**

43.   *OAC claimed a contractual right to an alleged $20,000 "OAC Expenses" in its May 7, 2015 payoff demand. (Ex. 6 to OAC Counterclaim, ECF No. 123-6.)*

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

44.   *To support this alleged expense, OAC has produced one invoice from Clarion Security LLC that totals $693.75 for armed guard services that were provided at Avery's headquarters between April 19 and April 25, 2015. (See OAC 00085, attached hereto as Ex. I.)*

**RESPONSE:** Undisputed for the purpose of ruling on Banded's Motion only.

45.   *No additional documents exist to support the alleged $20,000 charge. (See Ex. C, OAC Resp. No. 6 to Banded's Requests for Production.)*

**RESPONSE:** Disputed.  In discovery, Peak Rock produced to Banded a spreadsheet listing $16,437.52 in expenses incurred by OAC.  *See* Peak Rock 004481-004484, attached as **Exhibit D** to OAC's Response to Banded's Motion.  Those expenses—mostly travel related—were incurred by principals and employees of OAC in their efforts to enforce OAC's rights under the SunTrust Note.  Moore Decl. ¶¶ 3-4.  Although Peak Rock paid some of those expenses on the front end, OAC ultimately reimbursed Peak Rock for those fees, as evidenced by

OAC's bank records showing a payment of $16,437.52 from OAC to Peak Rock on June 25, 2015.  Moore Decl. ¶¶ 5-7; OAC000094, attached as **Exhibit E** to OAC's Response to Banded's Motion.

Respectfully submitted,

*/s/ Jonathan D. Tebbs*
Jonathan D. Tebbs (TN Bar No. 35354)
Burr & Forman LLP
511 Union Street, Suite 2300
Nashville, TN 37219
Telephone:  (615) 724-3271
Facsimile:  (615) 724-3371
Email:  jtebbs@burr.com

and

D. Christopher Carson (TN Bar No. 29171)
Burr & Forman LLP
420 N. 20th Street, Suite 3400
Birmingham, AL 35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100
Email:  ccarson@burr.com

*Counsel for Defendants Peak Rock Capital*
*LLC and Outdoors Acquisition Co., LLC*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed with the Court's ECF/CM system, which shall transmit a true and correct copy of the foregoing document upon the following:

R. Campbell Hillyer
Michael C. McLaren
Butler Snow L.L.P.
6075 Poplar Avenue, Suite 500
Memphis, TN  38119
*Counsel for Plaintiff Avery Outdoors, LLC*
*f/k/a Banded Finance, LLC*

Edward M. Bearman
The Law Office of Edward M. Bearman
780 Ridge Lake Blvd., Suite 202
Memphis, TN 38120
*Counsel for Third-Party Defendant*
*AO Liquidation Trust, Inc.,*
*f/k/a Avery Outdoors, Inc.*

This the 19th day of June, 2017.

/s/ Jonathan D. Tebbs
Jonathan D. Tebbs