**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

AVERY OUTDOORS, LLC,

     Plaintiff,

v.                                                                                    2:16-cv-02229-SHL

PEAK ROCK CAPITAL, LLC, *et al.*,

     Defendants.

**MEMORANDUM SUPPORTING MOTION OF AO LIQUIDATION TRUST, INC.**
**TO DISMISS OR, IN THE ALTERNATIVE, TO STAY**
**CLAIMS OF PLAINTIFF OUTDOORS ACQUISITION CO., LLC**

## I.    INTRODUCTION

Outdoors Acquisition Co., LLC ("OAC") filed a Third-Party Complaint ("TPC") asserting claims against AO Liquidation Trust, Inc., f/k/a Avery Outdoors, Inc. ("Avery"), for promissory estoppel (Count I), intentional misrepresentation (Count II), negligent misrepresentation (Count III), and conspiracy to "divest OAC of its lien interest in Avery's property" (Count IV), all based solely on the alleged acts of a court-appointed receiver for Avery (collectively, "Receiver Claims"). (Document ["Doc."] 123). OAC then filed an Amended Third-Party Complaint ("Amended TPC") with two new claims (Count V and VI) asserting that Avery is obligated to indemnify OAC for the claims asserted herein by Plaintiff Avery Outdoors, LLC, f/k/a Banded Finance, LLC ("Banded") based on loan documents that Avery's lender assigned to OAC (collectively, "Indemnity Claims"). (Doc. 142). Avery has moved to dismiss or, in the alternative, to stay each of Banded's claims (the "Motion").

OAC's claims must be dismissed for lack of subject matter jurisdiction under (1) the *Barton* doctrine because the State Court has not authorized suit based on the alleged actions of non-party John Ryder, as a court-appointed receiver, during Avery's receivership in the Chancery Court for Shelby County, Tennessee (the "State Court"); and (2) the *Rooker-Feldman* doctrine because OAC's claims challenge the validity of the State Court's final orders in the Receivership proceeding, including, without limitation, those approving the loan payoff to OAC and the sale of Avery's core business assets.

If the Court does not lack subject matter jurisdiction, then it should nonetheless abstain from exercising jurisdiction.  First, abstention is warranted under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), because OAC's claims necessarily implicate and undermine Avery's pending judicial dissolution, wherein the State Court is charged with administering the statutory scheme governing Tennessee corporations.  Second, abstention is warranted under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, *reh'g denied*, 426 U.S. 912 (1976).

Alternatively, if the Court has subject matter jurisdiction and decides to exercise it, the Receiver Claims must be dismissed pursuant to Rule 12(b)(6) because they are based on Ryder's alleged actions as receiver, in which case the claims are barred by derived judicial immunity (if Ryder acted with court authority) or lie only against Ryder (if he acted without court authority). In no event were Ryder's actions attributable to Avery.[1]  OAC's Indemnity Claims should also be dismissed because Avery was discharged from and Banded assumed any and all surviving liabilities related to the loan.

## II.   APPLICABLE STANDARDS

The Sixth Circuit described the standard for 12(b)(1) Motions as follows:

---

[1]  Additional, Ryder is an indispensable party within the meaning of Rule 19(b); however, for the reasons stated in Section V.A, he is barred from being joined as a party unless the State Court, which appointed him as receiver, authorizes the lawsuit.

> A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack).  A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis.
>
> A factual attack challenges the factual existence of subject matter jurisdiction. In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case.  Plaintiff bears the burden of establishing that subject matter jurisdiction exists.

*Cartwright v. Garner,* 751 F.3d 752, 759–60 (6th Cir. 2014) (internal citations omitted).

Here, the Court's lack of subject matter jurisdiction and the ample grounds for abstention are shown by (a) the allegations in the Amended TPC, (b) the attached exhibits, and (c) the pleadings and orders in the State Court proceedings appropriate for judicial notice.[2]

If the Court denies Avery's Rule 12(b)(1) motion, then Avery has moved to dismiss OAC's claims pursuant to Rule 12(b)(6).  On a 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will [ultimately] ... be a context-specific task that requires the

---

[2] Just as OAC sought judicial notice of pleadings and orders in the State Court receivership, Avery seeks judicial notice of additional orders in Avery's receivership proceeding and pleadings filed in its judicial dissolution proceedings in State Court.  These documents are attached to the Motion as Exhibits 1-7 and are proffered to show the nature of the proceedings and the pending status of the dissolution suit.  They are also appropriate for judicial notice, especially in ruling on the jurisdictional issues.

reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citation and internal quotation omitted). When considering a 12(b)(6) motion, the Court "may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Basset v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The court may consider additional materials if they are public records or are otherwise appropriate for the taking of judicial notice.[3] *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.2003).

### III.   SUMMARY OF OAC'S FACTUAL ALLEGATIONS

As alleged in the Amended TPC,[4] Avery was at one point, the largest waterfowl equipment business in the world. (¶¶ 7-8). Avery's principals were Tom Matthews ("Matthews"), who handled product development and manufacture (in China), and Allen Hughes ("Hughes"), who managed Avery's day-to-day operations and financial affairs. (¶¶ 9-10). Banded was a competitor of Avery. (¶ 11). Avery's primary lender was SunTrust Bank, NA ("SunTrust"), which had a blanket lien on Avery's assets, as security for an outstanding loan (the "Loan") evidenced by certain loan documents (collectively, the Loan Documents"). (¶ 12 & Ex. 1 to TPC). Avery defaulted on the Loan when it matured in 2014. (¶ 21). Also, Hughes

---

[3]  As OAC has itself acknowledged, appropriate subjects of judicial notice include court proceedings. (Doc. No. 143, p. 7 n. 3) (citing cases). Judicial is especially appropriate in ruling on abstention. *See, e.g., Lumen Const., Inc. v. Brant Const. Co.*, 780 F.2d 691, 697 n.4 (7th Cir.1985) (finding that "the official record of the parallel state case is a proper object for judicial notice" on a motion to abstain); *Blake v. Wells Fargo Bank, NA*, 917 F.Supp.2d 732, 738 (S.D. Ohio 2013) (taking judicial notice of state court orders in ruling on *Colorado River* abstention issue); *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 502 n.1 (S.D.N.Y. 2016) (taking judicial notice of state court documents in ruling on motion to dismiss based on *Rooker-Feldman* doctrine).

[4]  Unless otherwise indicated, all citations solely by paragraph number(s) are citations to the Amended TPC.

abandoned his post and stopped communicating with SunTrust. (¶¶ 22-23). As a result, on November 13, 2014, SunTrust filed suit against Avery in the State Court, alleging breach of contract and seeking, among other things, the appointment of a receiver. (¶ 24). *See SunTrust Bank v. Avery Outdoors, Inc.*, Case No. CH-14-1667-1, Chancery Court for Shelby County, Tennessee (the "Receivership"). On November 14, 2014, the State Court appointed John L. Ryder (the "Receiver") as the Receiver for Avery,[5] and his appointment was confirmed by order entered December 12, 2014. (¶¶ 25-26 & Ex. 2 to TPC). The original appointment order states that "[t]he Receiver is acting as an officer of the Court and not as an agent of any party to this matter …," which, of course, included Avery.[6] (Ex. 1 to Motion, ¶ 24).

By February 2015, Matthews was enjoined from Avery's premises, from having access to information regarding, and from having any input into Avery. (¶ 30). On April 2, 2015, OAC acquired the Loan and the Loan Documents from SunTrust. (¶ 33). Between April 8, 2015 and April 16, 2015, OAC and the Receiver discussed the financial condition of Avery, a potential forbearance agreement, as well as the Receiver's plan for an auction sale of Avery's assets. (¶¶ 36-46). Upon learning that a multi-million dollar cash infusion would be required for Avery to operate beyond May 2015, OAC decided to conduct a foreclosure sale. (¶¶ 49-55). The foreclosure sale was initially scheduled for May 4, 2015, but was later postponed to May 11, 2015. (¶¶ 56-58 & Ex. 3 to TPC). OAC also provided the Receiver with the Loan payoff. (¶ 60 & Ex. 4 to TPC).

---

[5] A copy of the November 14, 2014 order appointing the Receiver is attached to Avery's motion as Exhibit 1.

[6] Throughout the TPC, OAC asserts that it was dealing with "Avery" in its discussions; however, all of the purported representations, on which OAC bases its claims, are alleged to have been made by the Receiver (and not Avery's management) after the Receiver had assumed control, under the direct authority of the State Court, over all aspects of Avery and its business, as evidenced by the orders of the State Court. Under applicable law and the explicit language of the State Court's order appointing the Receiver (Ex. 1 to Motion), Ryder was acting solely as an officer of the Court and not as an agent of Avery. Under *Twombly* and *Iqbal*, this Court should ignore OAC's legal conclusions as to whether the Receiver's actions are attributable to Avery.

While OAC worked toward a foreclosure sale, the Receiver negotiated with Banded for a Bridge Loan. (¶¶ 65-67). Pursuant to an agreed order entered on May 1, 2015, the foreclosure sale would proceed unless the Bridge Loan closed such that OAC received the proceeds to pay off the Loan by May 8, 2015, at 4 pm CDT. (¶¶ 72-75 & Ex. 5 to TPC). Because the final Loan payoff included the Disputed Fees (as defined in the Amended TPC), the Receiver scheduled a hearing for May 8, 2015, at 11:30 am, on a motion for a TRO barring the foreclosure sale. (¶¶ 78-84). The hearing did not go forward, however, as Banded sent OAC the full Loan payoff before the deadline stated in the State Court's May 1, 2015 order. (¶¶ 98-100).

OAC accepted the payoff, in lieu of proceeding with the TRO hearing, allegedly based on the Receiver's representations that the Receiver no longer wanted to contest the Disputed Fees. (¶¶ 91-93, 98, 101). In "late July 2015," OAC released its lien based on the payoff. (¶¶ 117-118). After the payoff, the Receiver solicited bids for the sale of Avery's assets, and he later accepted Banded's bid as the "best offer." (¶¶ 104-112). By order entered July 2015, the State Court approved the Receiver's sale to Banded. (¶113). The sale was later memorialized in Asset Purchase Agreement. (¶ 114 & Ex. 7 to TPC).

Banded initiated this action in the State Court on April 8, 2016 (Document ["Doc."] 1-2 filed in this case). Once Banded filed its complaint, OAC was aware of the Receiver's alleged fraud/misrepresentation upon which OAC now bases its claims, but OAC declined to seek relief from the State Court whose orders were implicated. Instead, Defendants removed the case to this Court. (Doc. 1). Defendants did not file an answer until August 18, 2016. (Doc. 46).

## IV.    ADDITIONAL FACTS APPROPRIATE FOR JUDICIAL NOTICE[7]

---

[7] To the extent necessary, Avery moves the Court pursuant to Federal Rule of Evidence 201 to take judicial notice of the facts set forth in this section, along with any additional facts about the Receivership and judicial dissolution proceedings capable of judicial notice.

On June 7, 2016, the State Court entered an Order Approving Final Report of Receiver, Discharging Receiver and Terminating Receivership.[8] (¶ 116; a copy the June 7, 2016 order was filed by OAC as Doc. No. 143-1. The Receivership was therefore pending from November 2014 until June 2016. As reflected by the State Court docket, OAC has not filed a motion in the State Court seeking relief from its Receivership orders or seeking authorization to file claims based on the Receiver's actions. (Docket entries are attached to the Motion as Exhibit 2).

Avery also is the subject of a pending judicial dissolution proceeding in the State Court, which was originally filed by Hughes back in February 2015, in a case styled *Allen Hughes v. Thomas Matthews*, No. Ch-15-0225-2 (the "Dissolution Proceeding"). (See copy of Petition attached to the Motion as Exhibit 3). Hughes sought, among other things, judicial dissolution of an Avery affiliate named G. R. Jones Land Company, LLC. The Dissolution Proceeding was suspended until January 9, 2017, when Hughes filed an Amended Petition which added a claim for the judicial dissolution of Avery. (See copy of Amended Petition attached to the Motion as Exhibit 4). Matthews filed an Answer and Counter-Petition, seeking judicial dissolution of Avery and all of its affiliates, and asserting a damages claim against Hughes. (See copy of Answer and Counter-Petition attached to the Motion as Exhibit 5). Hughes has purported to assert a Counter-Petition in reply. (*See* copy of Hughes' Reply Counter-Petition attached to the Motion as Exhibit 6). The Dissolution Proceeding in still pending in the State Court, and discovery has begun. (*See* docket entries attached to the Motion as Exhibit 7).

## V.    ARGUMENT

**A.    OAC'S CLAIMS AGAINST AVERY MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER BECAUSE THE *BARTON* DOCTRINE.**

---

[8] In the Amended TPC, OAC mistakenly identified the year of the order as 2015. (¶ 116).

Over 135 years ago, the United States Supreme Court stated that: "It is a general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Barton v. Barbour*, 104 U.S. 126, 128 (1881). The Supreme Court held that if leave of court were not obtained, then the other forum lacked subject matter jurisdiction. *Barton*, 104 U.S. at 127. This rule, sometimes called the "*Barton* doctrine," has been applied to bar suits against bankruptcy trustees, as well as state court receivers. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993). Here, OAC did not seek leave of the State Court, which oversaw the very transactions on which OAC's claims are based, to sue the Receiver. This court therefore lacks subject matter jurisdiction over OAC's claims, all of which are based on the Receiver's actions during the Receivership.[9]

**B.      OAC'S CLAIMS MUST BE DISMISSED BECAUSE THIS COURT LACKS SUBJECT MATTER JURISDICTION PURSUANT TO THE *ROOKER-FELDMAN* DOCTRINE.**

Under the *Rooker–Feldman* doctrine, "inferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir.2004); see *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Recently, a federal district court in New York applied the *Rooker-Feldman* doctrine in deciding to abstain from exercising jurisdiction over claims that were "inextricably intertwined" with the receivership order of a Michigan state court. *Value Manufactured Homes, LLC v. Key Bank, N.A.*, 919 F. Supp. 2d 303, 307 (W.D.N.Y. 2013). Ruling that the state court had vested the receiver with authority over the mobile home park that was the subject of the federal suit, the

---

[9]   OAC cannot circumscribe this jurisdictional requirement merely by purporting to sue Avery, instead of the Receiver, for actions of the Receiver occurring exclusively during the Receivership.

district court held that abstention was appropriate. *Id.* The case for *Rooker-Feldman* abstention is even clearer here, as OAC's claims necessarily challenge, not just the Receiver's assumption of authority of Avery's assets, but subsequent acts of the Receiver that were expressly authorized and approved by the State Court: (1) entry into the Bridge Loan to pay off the Loan, and (2) selling Avery's core business assets to Banded. Because OAC's claims are inextricably intertwined with the State Court's prior orders approving these transactions, this Court lacks subject jurisdiction over those claims under the *Rooker-Feldman* doctrine.

**C.     ASSUMING THIS COURT DOES NOT LACK JURISDICTION UNDER BARTON AND/OR ROOKER-*FELDMAN*, IT SHOULD NONETHELESS STAY OAC'S CLAIMS AGAINST AVERY BASED ON THE *BURFORD* AND *COLORADO RIVER* ABSTENTION DOCTRINES.** [10]

"Abstention is a judicially created exception to the general grant of jurisdiction set forth in Article III of the Constitution." *Ada-Cascade Watch Co., Inc. v. Cascade Resource Recovery, Inc.*, 720 F.2d 897, 901 (6th Cir. 1983). "The doctrine permits federal courts to decline or postpone the exercise of jurisdiction so that a state court will have the opportunity to decide the matters at issue." *Id.* Abstention is "the exception, not the rule" and therefore justified only where the "order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 813. "[I]n cases where the relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996). On the other hand, federal courts may only stay actions for damages based on abstention principles. *Id.*

---

[10] In fact, abstention may be warranted as to the entire case, as the dispute between Banded and OAC over the Disputed Fees necessarily implicates the State Court's orders approving the Receiver's actions with respect to the sale of Avery's core business assets to Banded.

For the reasons stated below, abstention is warranted in this case. Because at least some of the claims asserted by OAC against Avery are for money damages, this Court should stay the litigation as to any claims that are not dismissed for lack of subject matter jurisdiction.

> **1.** **Abstention is warranted under *Burford* because Avery is the subject of a pending Dissolution Proceeding in the State Court, which is where OAC should be asserting any claims related to the Receiver and/or Avery.**

One abstention doctrine, which was first announced in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), seeks to protect a state's interest in maintaining uniformity in the application of state laws or regulations to an essentially local problem:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (internal quotation marks omitted); *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660-61 (6th Cir. 2002).

Although there is no "formulaic test for determining when dismissal is appropriate under *Burford*," *Quackenbush*, 517 U.S. at 727, "[f]ederal courts have recognized the significant state interest in placing proceedings relating to an insolvent or debtor party under the control of a single court." *Value Manufactured Homes,* 919 F. Supp. 2d at 308. In *Value Manufactured*, the district court applied *Burford* in deciding to abstain from exercising jurisdiction over claims based on the defendant's alleged misconduct in the course of a state court receivership. *Id.* The court held that the claims should be litigated in the state court, even though plaintiffs did not assert claims against the receiver, but only against the secured party who obtained the receiver's appointment and an individual officer of the receiver. *Id.* The same rationale applies here.

The Sixth Circuit has also recognized the significant state interest "in the uniform development and interpretation of the statutory scheme regarding its corporations." *Caudill*, 301 F.3d at 664-65 (affirming district court's reliance on *Burford* to dismiss a shareholder action seeking dissolution of a Kentucky corporation).  In *Caudill*, the Sixth Circuit held that *Burford* abstention was appropriate because the Kentucky Legislature has enacted a comprehensive statutory scheme to govern businesses which elect to incorporate in the state.  *Id.* at 665.  Here, Avery is currently the subject of a Dissolution Proceeding, which was brought by one of Avery's shareholders under the Tennessee Business Corporation Act, Tennessee's comprehensive statutory scheme governing corporations.  OAC's claims against Avery, if allowed to proceed, will undermine the shareholders' ability to dissolve and wind down Avery, as the State Court will be unable to assume control over all potential creditor claims.  Also, OAC's claims necessarily implicate the State Court's Receivership orders with respect to payoff of the Loan and disposition of Avery's assets.  Thus, the State Court has a dual interest in exercising jurisdiction over OAC's claims.  If OAC intends to pursue these claims against Avery and/or the Receiver, then OAC should be required to assert them in the pending Dissolution Proceeding before the State Court, which (unlike this Court) would also have subject matter jurisdiction to examine the Receiver's actions.

    **2.**      **Because this litigation parallels the prior Receivership and the pending Dissolution Proceeding, abstention is also warranted under *Colorado River*.**

The Supreme Court has also authorized abstention, in "exceptional circumstances," where parallel state-court litigation could result in a "comprehensive disposition of litigation" and the conservation of judicial resources. *Colorado River*, 424 U.S. at 813, 817-18.  Despite the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," 424 U.S. at 817, considerations of judicial economy and federal-state comity may justify abstention

in situations involving the contemporaneous exercise of jurisdiction by state and federal courts. *Id.* Before the *Colorado River* doctrine can be applied, the district court must first find that the concurrent state and federal actions are parallel. *Romine v. Compuserve Corporation*, 160 F.3d 337, 339 (6th Cir. 1998). "[E]xact parallelism" is not required; "[i]t is enough if the two proceedings are substantially similar." *Id.* at 340 (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir.1989)).

Here, the same parties were involved in the Receivership in State Court, and they had the opportunity to litigate whether Avery's core business assets should be (a) sold by OAC in the foreclosure sale, or (b) sold by the Receiver to Banded. As alleged in the Amended TPC, when OAC decided to forego the foreclosure sale based on its acceptance of the Loan payoff, it was aware of the Receiver's intention to sell Avery's assets at auction. OAC had already conducted due diligence on Avery, and it had the ability to submit its own bid to purchase Avery's assets, funded in part by the Loan payoff. OAC also had the ability to litigate the Receiver's proposed sale procedures and his sale to the winning bidder, but instead OAC chose not to litigate those issues. OAC alleges that certain representations and actions of the Receiver induced OAC to forego its opportunity to litigate these issues, but the fact remains that the issues were previously presented to the State Court. If OAC claims the Receiver perpetrated a fraud on the State Court, then OAC should apply to the State Court for relief from the orders approving the Receiver's actions. The most obvious vehicle for doing so would be to file an appropriate motion or complaint with the State Court, which is currently overseeing the Dissolution Proceeding.

Because the Receivership and Dissolution Proceeding constitute parallel litigation, the next step in the analysis is to weigh several factors to determine whether abstention is appropriate:

(1) whether either court has assumed jurisdiction over a res; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls and (6) whether the state proceeding is adequate to protect the parties' rights.

*Colorado River*, 424 U.S. at 818; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).  The "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone*, 460 U.S. at 16.  Here, <u>all</u> of the relevant factors support abstention under *Colorado River*.

### 1.    Jurisdiction over a *Res*.

The *res* at issue here is Avery's business, over which the State Court assumed jurisdiction in November 2014, when the Receivership was filed and the Receiver appointed.  This Court, in contrast, has yet to assume jurisdiction over Avery's business and has just now been asked to assume jurisdiction over a claim against Avery for money damages.

### 2.    Relevant Forum Convenience.

Given that both this Court and the State Court sit in Memphis, Tennessee, relative convenience of the forums is not a relevant factor.

### 3.    Avoiding Piecemeal Litigation.

Staying or dismissing this case will avoid piecemeal litigation and will concentrate all issues and disputes related to Avery, any claims of its creditors, any claims of its shareholders, and any claims related to the disposition of its assets, in one court: the State Court.  Also, if the Receiver cannot be sued in this Court (for the reasons discussed in Section V.B), then the State Court would be the only forum where complete relief could be afforded.

### 4.    Timing of Parallel Litigation.

The Receivership in State Court was filed first, in November 2014, and it had proceeded for over 16 months before Banded filed this action.  Banded's action was originally filed in the State Court, but it was removed by Defendants to this Court.  Furthermore, the Receivership had proceeded all the way to the sale and disposition of Avery's core business assets, almost nine months before this action was filed.  In fact, the Receivership proceeding closed in June 2016, at which point Defendants had not even answered Banded's complaint in this case.  Indeed, OAC was aware of the Receiver's alleged misrepresentations in April 2016, when Banded filed suit; therefore, OAC could have raised the Receiver's alleged fraud (and fraud on the court) with the State Court prior to the Receivership's termination.  OAC's dilatory behavior in raising this issue, to the obvious disadvantage of Avery, provides additional support for abstention.

5.      Whether Federal Law Controls.

This factor is irrelevant, as none of the litigants have invoked federal law on the substantive claims.  Rather, Tennessee law controls all claims, and as discussed above, Tennessee's statutory scheme for administering distressed corporations is clearly implicated.

6.      Whether the State Court Will Adequately Protect Parties' Rights.

The State Court forum is the only one certain to afford complete relief to all parties, including Banded, OAC, Peak Rock, Avery, and the Receiver.  The State Court has jurisdiction over the Receiver and the power to review its prior orders on any appropriate grounds.  *See, e.g.*, Tenn. R. Civ. P. 60.2 (authorizing a court to grant relief from a final judgment order for, inter alia, "(2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party").  The State Court also has jurisdiction over all of Avery's remaining assets, in the Dissolution Proceeding, and can orderly handle any and all claims of creditors, including any unliquidated claims such as those now asserted by OAC in this Court.

Moreover, the State Court, unlike this Court, can also adjudicate the additional disputes between the owners of Avery (Matthews and Hughes).

Because all relevant factors favor abstention, this case presents the "exceptional circumstances" warranting abstention over all claims asserted in this case.

**D.    IF JURISDICTION EXISTS AND THE COURT DECIDES TO EXERCISE IT, THEN THE RECEIVER CLAIMS (COUNTS I THROUGH IV) MUST BE DISMISSED BECAUSE THEY CAN BE ASSERTED ONLY AGAINST RYDER, AS RECEIVER, AND ARE BARRED BY DERIVED JUDICIAL IMMUNITY.**

For the foregoing reasons, the Court should dismiss this action for lack of subject matter jurisdiction and should abstain from exercising jurisdiction with respect to any claims over which the Court finds that has subject matter jurisdiction.  In the event the Court decides to exercise jurisdiction over any of OAC's claims, they should be dismissed for failure to state a claim on which relief can be granted for the reasons stated below.

**1.    Avery cannot be liable for the Receiver's conduct during the Receivership.**

Tennessee courts do not appear to have considered whether a corporation can be liable for the acts of a court-appointed receiver during the course of a receivership.  Courts in other states have held that a corporation is not liable for the receiver's torts or contracts.  Upon appointment by the court, "the receivers, not the corporation, were liable for any wrong thereafter done in the transaction of the business confided to their care." *Gaboury v. Central Vermont Ry. Co.*, 250 N.Y. 233, 165 N.E. 275, 277 (1929).  "As a general rule, a corporation cannot be held liable for the acts of a receiver when the corporation had no power to act." *Henry v. Jefferson County Personnel Bd.*, 519 F. Supp. 2d 1171, 1180 (N.D. Ala. 2007); *accord Echols v. Seaboard Air Line Ry. Co.*, 174 S.C. 537, 178 S.E. 139 (1935) (collecting cases on railroads in receivership).  Indeed, the State Court's order appointing the Receiver (Ex. 1 to Motion) explicitly states, in paragraph 24, that Ryder was not acting as an agent for anyone.  Thus, only

the Receiver, and not Avery, is potentially liable to OAC for the Receiver's acts during the Receivership.  Avery cannot be liable under vicarious liability or apparent authority.

Indeed, a receiver has no authority or ability to make binding promises or contracts on his own.  "A receiver is an officer of the court, with limited powers."  *Farmer v. Miller*, 496 S.W.3d 485, 490 (Ky. 2016).  "He is at all times subject to the control and direction of the court, and, generally speaking, has only such powers as are conferred by order of court."  *Id.*  As another court has explained:

> [A receiver] is but the arm or hand of the court. He acts as the representative of the court and is subject to its orders. The court itself has the custody of the estate; the receiver is but the court's creature.
>
> So, it is a well-settled rule that a receiver has no power to bind the estate in his hands by contract without the authority of the court.  His contracts are ineffectual to bind the estate unless previously authorized or subsequently approved by the court.  This rule is so well settled that all persons contracting with a receiver are chargeable with knowledge of his inability to contract, and enter into contracts with him at their own peril. So, too, it is held, in view of this rule, that where persons knowingly deal with a receiver in his official capacity, and there is no agreement or intention that he shall be personally bound, he is not personally liable, though he acts in excess of his authority.  He does not become personally liable merely because he undertakes to bind the estate in a contract he is not authorized to make. In the absence of fraud, or an agreement or intention on his part to assume personal liability, the other contracting party is charged with knowledge of his want of authority, and there is no warrant for a shifting of the liability to him personally.

*Miller, Franklin & Co. v. Gentry*, 230 Mo. App. 89, 279 S.W.2d 470, 473-747 (1935) (citations omitted).  OAC's Count I claim for promissory estoppel fails because the Receiver lacked the authority to make binding promises, and OAC could not reasonably rely on any such promises.  Rather, OAC needed to obtain an express order of the State Court confirming that the Receiver was releasing any claims related to the Disputed Fees.  Otherwise, the Receiver's alleged

promises are not binding and are not actionable in the absence of fraud.[11]  Accordingly, all of the

Receiver Claims fail as a matter of law.

> **2.      For actions done in his official capacity, the Receiver is immune from suit; thus, even assuming Avery were responsible for his actions, Avery also is immune from suit.**

Judicial immunity is a long-standing doctrine of American jurisprudence dating back to

1872. *Bradley v. Fisher*, 80 U.S. 335, 20 L.Ed. 646 (1872). "[A] judge is immune from civil

liability for bona fide acts done in the exercise of his judicial function while acting within the

limits of his jurisdiction."  *Harris v. Witt*, 552 S.W.2d 85, 85 (Tenn.1977).  A receiver acts as a

representative or officer of the court.    *KMC Co. v. Nabors*, 572 S.W.2d 255, 258

(Tenn.App.1977).   Thus, "receivers who act within the scope of authority granted to them by

their appointing court are entitled to quasi-judicial absolute immunity for their actions." *NPF IV,*

*Inc. v. Servicemaster Diversified Health Services, L.P.*, No. 4:95–CV–141, 1998 WL 1073910,

*5 (E.D. Tenn., April 10, 1998) (applying Tennessee law, as predicted by district court).  Courts

in other jurisdictions have similarly held that a court-appointed receiver is immune from suit

unless the appointing court finds that the receiver has acted outside the scope of the order of

appointment.[12]

---

[11]  With respect to any alleged fraud, misrepresentation, or promissory estoppel, derived judicial immunity bars all claims not based on actual fraud (see next section), and the Receiver himself is liable for all claims based on actual fraud.  (See Section V.D.3).

[12]  *See, e.g.*, *Kermit Constr. Corp. v. Banko Creditor Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976) ("[A] receiver who faithfully and carefully carries out the orders of his appointing judge must share the judge's absolute immunity."); *Davis v. West*, 317 S.W.3d 301, 307 (Tex. Ct. App. 2009) (receiver immune from liability for acts "grounded in his conduct as receiver") (internal citations and quotations omitted); *Capitol Terrace, Inc. v. Shannon & Luchs, Inc.*, 564 A.2d 49, 53 (D.C. Ct. App. 1989) ("[W]hen a receiver acts within the scope of its authority, confining itself to the duties of its office, it shares the immunity of the appointing judge even though it is alleged to have acted wrongly in performing those duties."); *Prop. Mgmt. & Inv. v. Lewis*, 752 F.2d 599, 603-604 (11th Cir. 1985) (receiver immune from personal liability for alleged embezzlement of corporate assets and defamatory statements because such acts involved decisions made by receiver in administering receivership estate); *Farmer*, 496 S.W.3d at 490-491 (receiver "entitled to qualified immunity from liability for negligence arising from the performance of discretionary actions (i.e., actions involving personal deliberation, decision, and judgment) taken in good faith and within the scope of his authority."); *Bankers Fed. Sav. FSB v. Off W. Broadway Developers*, 227 A.D.2d 306, 306, 643 N.Y.S.2d 52 (1st Dept.1996) (affirming dismissal of claim against the receiver for damage to

"Like the court itself, the receiver's immunity from suit exists by virtue of the *context* in which he acts, not the *content* of his actions." *Mashni v. Foster ex rel. County of Maricopa*, 234 Ariz. 522, 323 P.3d 1173, 1178 (2014). Immunity from suit is afforded to court-appointed officials, such as receivers, who carry out asset sales pursuant to a court order. *See J.P. Silverton Industries L.P. v. Sohm*, 243 Fed. Appx. 82, 89 (6th Cir. 2007) (holding that court commissioner was immune from suit with respect to sale of property pursuant to a court order); *Teton Millwork Sales v. Schlossberg*, 311 Fed. Appx. 145, 150 (10th Cir.2009) ("a court-appointed receiver has absolute quasi-judicial immunity if he is faithfully carrying out the appointing judge's orders") (collecting cases). Where the receiver is immune from liability, the corporation in receivership, which is alleged to be vicariously responsible for the acts of the receiver, cannot be liable. *Henry v. Jefferson County Personal Bd.*, 519 F. Supp. 2d 1171, 1182-83 (N.D.Ala. 2007) (county personnel board protected by "vicarious immunity" as an extension of the judicial immunity of the board's court-appointed receiver).

Here, the State Court, by its orders, specifically authorized the Receiver to close on the Bridge Loan and to sell Avery's business assets to Banded. Thus, OAC's Receiver Claims (Counts I through IV) must be dismissed because Ryder and Avery are immune from claims based on actions of the Receiver authorized by the Court. *See Davis*, 70 F.3d at 373 (when nothing in the complaint indicates that the receiver acted outside the scope of court's authority, the receiver is immune from liability and dismissal of the claims is appropriate under Rule 12(b)(6)); *Property Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 603-04 (11th Cir. 1985) (same).

3. **If the Receiver's actions were fraudulent, then he could be personally liable to OAC; but, Avery cannot be vicariously liable for the Receiver's fraud.**

---

property because "the receiver had no personal liability for the actions performed within his official capacity and within the scope of his authority pursuant to the receivership order.").

The derived judicial immunity of a court-appointed receiver is not "limitless." *Schlossberg*, 311 Fed. Appx. at 150. Because perpetuating a fraud is not "intrinsically associated with a judicial proceeding," *id.* at 151, a receiver is not immune from suit for fraudulent misrepresentations. *Id.* Thus, the Receiver is not immune from OAC's fraud claim if it were asserted against Ryder personally. As demonstrated in Section V.D.1, Avery is not liable for the Receiver's actions during the Receivership. While OAC may seek to assert a fraud claim against Ryder in the State Court, its fraud claim against Avery must be dismissed.

**E.    OAC'S INDEMNITY CLAIMS (COUNTS V AND VI) MUST BE DISMISSED BECAUSE AVERY WAS DISCHARGED FROM AND BANDED ASSUMED ANY AND ALL SURVIVING OBLIGATIONS UNDER THE LOAN DOCUMENTS.**

The Uniform Commercial Code is the exclusive means by which obligations under negotiable instruments may be discharged. *Commerce Union Bank v. Burger–In–A–Pouch, Inc.*, 657 S.W.2d 88, 91–92 (Tenn.1983); Tenn. Code Ann. § 47–3–601(a). "Part 6 of Article 3 singles out several events for individual treatment, including discharge by payment, tender of payment, and by cancellation or renunciation." *Cumberland Bank v. G & S Implement Co., Inc.*, 211 S.W.3d 223, 228 (Tenn. App. 2006) (citing, in footnotes, Tenn. Code Ann. § 47–3–602 to -604). Without question, OAC accepted, as full payment of the Loan, the May 8, 2015 wire transfer from Banded.[13] By statute, this payment discharged Avery from any and all obligations under the Note. Tenn. Code Ann. § 47–3–603.

Even assuming any indemnification obligations survived, despite OAC receiving full payment, such obligations were assumed by Banded when it acquired Avery's assets in July 2015. In that transaction, the Loan payoff was applied toward the purchase price of Avery's assets. (¶¶ 114 & Asset Purchase Agreement § 2.2(b), attached to TPC as Exhibit 7). Any

---

[13] The dispute between OAC and Banded is over whether the payment was <u>more</u> than full payment, as claimed by Banded in its complaint. The gravamen of Banded's claim is really unjust enrichment, as it is based on the theory that OAC received money that, in equity, it should not be entitled to retain.

remaining obligations owing by the Loan obligor were assumed by Banded, as the party that actually acquired the collateral that had secured the Loan.[14] To rule otherwise would be wholly inequitable, as Avery would be held responsible for defense costs incurred, not as a result of any act or omission of Avery, but as a result of the Receiver's fraud. Also, Banded's claims do not arise out of transactions "contemplated by the Loan Documents" or "between Bank and Borrower," for which indemnification might be owing. (Doc. 123-1, p. 19, ¶ 12.2). Banded's claims arise out of the alleged fraud of the Receiver (and not Avery, as Borrower) in connection with the Loan payoff by the Receiver and funded entirely by Banded (and not Avery). For these reasons, Counts V and VI should be dismissed for failure to state a claim.[15]

## VI.    CONCLUSION

For the foregoing reasons, the Court should enter an order granting the Motion and dismissing or, as may be appropriate, staying each of OAC's claims in the Amended TPC.

Respectfully Submitted By,

**LAW OFFICE OF EDWARD M. BEARMAN**

 /s/ Edward M. Bearman
**EDWARD M. BEARMAN** (TN BPR #14242)
*Attorney for AO Liquidation Trust, Inc.*
*f/k/a Avery Outdoors, Inc.*
780 Ridge Lake Boulevard, Suite 202
Memphis, Tennessee 38120
Phone: (901) 682-3450
ebearman@jglawfirm.com

---

[14]  Considering the Loan Documents afforded the noteholder a blanket lien on Avery's assets, the Loan payoff was inextricably tied to the purchase of Avery's assets. Absent a full payoff, the Receiver could not convey Avery's assets to any purchaser, free and clear of all liens, as stated in the order approving the sale. Further, Banded expressly acquired the claim against OAC with regard to the Disputed Fees (Asset Purchase Agreement § 1.1(i), Ex. 7 to the TPC) for which OAC now seeks indemnity from Avery.
[15]  OAC is free to assert any such claims by way of counterclaim, setoff or recoupment against Banded.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed with the Court's ECF/CM System and should be served by means of the same upon the following interested person(s) on this, the 23rd day of June, 2017.

R. Campbell Hillyer, Esq.
Michael C. McLaren, Esq.
**BUTLER SNOW, L.L.P.**
6075 Poplar Avenue, Suite 500
Memphis, Tennessee 38119
cam.hillyer@butlersnow.com
michael.mcLaren@butlersnow.com

*Counsel for Plaintiff/Counter-Defendant Avery Outdoors, LLC
f/k/a Banded Finance, LLC*

and

D. Christopher Carson, Esq.
Jonathan D. Tebbs, Esq.
**BURR & FORMAN LLP**
420 N. 20th Street, Suite 3400
Birmingham, Alabama 35203
ccarson@burr.com
jtebbs@burr.com

*Counsel for Defendants Peak Rock Capital
LLC and Outdoors Acquisition Co., LLC*

 /s/ Edward M. Bearman
Edward M. Bearman, Esq.

21